**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **JUAN LOZADA-LEONI,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No.  5:19-cv-00011-RWS-CMC** |
| **MONEYGRAM INTERNATIONAL, INC.,** | § | |
| **JUAN MANUEL GONZALEZ and** | § | |
| **CHRISTOPHER PONDER in their official and** | § | |
| **individual capacities,** | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT MONEYGRAM INTERNATIONAL, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant MoneyGram International, Inc. ("MGI") files its Reply in Support of its

Motion to Dismiss ("Motion") [Doc. 5] and states:

**OVERVIEW**

1.       When Plaintiff elected to remove this dispute from the administrative realm on the

eve of trial, he attempted (he claims) to file suit in the Northern District of Texas, and

represented to MGI and to Administrative Law Judge Tracy Daly that he *had done so*, and was

just waiting on a docket number.  Several hours later, Plaintiff abandoned the Northern District

and filed suit in this Division, causing MGI understandable surprise.  When asked the reason for

the change, Plaintiff's counsel first blamed a "technical glitch," then said that he knew a motion

to transfer would soon follow, and indicated that he would "let my local counsel do the talking

for me." Given an opportunity to do so in the Response, Plaintiff and his counsel had nothing

compelling to say, other than admitting that ***does not have a local interest***.  Venue is not proper

in this District, and even if it were, every relevant factor favors transfer to the Northern District

or, alternatively, the Sherman Division.

## **PROCEDURAL HISTORY**

2.      The procedural complexity of this matter has only increased since MGI filed the Motion, and MGI therefore provides this procedural history for the Court's reference in determining the best order in which to address this Motion and other pending motions and matters.  Plaintiff Juan Lozada-Leoni ("Plaintiff") filed this action on January 23, 2019, when he filed his Original Complaint [Doc. 1], naming MGI, Juan Manuel Gonzalez ("Gonzalez") and Christopher Ponder ("Ponder") as defendants, and alleging a single cause of action for retaliation in violation of the Sarbanes-Oxley Act.   On March 20, 2019, Plaintiff his First Amended Complaint [Doc. 4], adding factual allegations but leaving the parties and claims unchanged.

3.      MGI filed the Motion on April 11, 2019, asking the Court to dismiss Plaintiff's claim against MGI pursuant to Rule 12(b)(3), because the Eastern District of Texas is an *improper* venue, or alternatively, to exercise its discretion under 28 U.S.C. § 1404(a) to transfer the case to either the Northern District, Dallas Division, or the Sherman Division of this District, because each of those is a more convenient venue than this Division.  Gonzalez and Ponder also filed dispositive motions [Doc. 6 and 7], in which they asked the Court to dismiss the claims against them under Rule 12(b)(1) and/or 12(b)(6) because Plaintiff failed to exhaust his administrative remedies, and alternatively seeking dismissal or transfer on the same venue-related grounds as MGI.

4.      On May 15, 2019, Plaintiff filed his Response in Opposition to All Defendants' Jurisdictional Motions ("Response") [Doc. 19], arguing that venue is proper in this District and that the Court should not exercise its discretion to transfer the case to a different District or Division.  On May 16, 2019, he filed his Second Amended Complaint [Doc. 21], dismissing Gonzalez and Ponder and adding MoneyGram Payment Systems, Inc. ("MPSI") as a defendant.

Thus, as of that date, MGI was the only defendant with a pending motion to dismiss. Contemporaneously with this Reply, MPSI will file its own dispositive motion, asking the Court to dismiss under Rule 12(b)(1) or 12(b)(6) for the same reasons raised by Gonzalez and Ponder (*i.e.*, failure to exhaust administrative remedies), and asking the Court to dismiss or transfer venue for the same reasons raised in the Motion. For the reasons explained below, it makes the most sense procedurally for the Court to resolve the failure to exhaust arguments in MPSI's motion before turning to venue. When the Court *does* reach the question of venue, it will find that Plaintiff has failed to overcome the grounds for dismissal or transfer raised in the Motion.

## ARGUMENT AND AUTHORITY

The Court should grant the Motion for the following reasons:

**A.**    **Plaintiff did not *attempt* to overcome MGI's evidence proving that venue is improper in this District; the Court should dismiss under Rule 12(b)(3).**

5.    In the absence of a special venue statute or other unusual circumstances, venue is only proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the District is located" or (2) "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(3).

6.    At the time MGI filed the Motion, Section 1391(b)(1) did not apply because Gonzalez – then a defendant – resides in Florida. However, as MGI explained, even if MGI had been the only defendant, venue would not be proper under Section 1391(b)(1) because MGI is not "deemed to reside" in the Eastern District. MGI introduced evidence proving that it is a Delaware corporation with its principal place of business in Dallas, Texas, and that it does not have employees in this District or transact business in this District. [Motion (Doc. 5) ¶¶ 8, 27.] MGI also introduced evidence that the alleged acts giving rise to Plaintiff's cause of action – *i.e.*, the acts that Plaintiff contend constitute unlawful retaliation on the part of his employer – were

by definition not done by MGI, because Plaintiff was employed by MPSI, not by MGI.  [Motion (Doc. 5) ¶¶ 8-10, 28-29.] Plaintiff has not attempted to controvert this evidence, and thus effectively concedes that venue would not be proper in this District, if MGI were the only defendant and if the allegations in the First Amended Complaint were the "live" allegations.

7.      The addition of MPSI as a defendant does not change the result, because Plaintiff's claims against MPSI are invalid.  The Court lacks subject-matter jurisdiction over MPSI because Plaintiff failed to exhaust his administrative remedies.  In particular, as with Gonzalez and Ponder, Plaintiff neglected to identify MPSI as a respondent in the administrative proceeding.  For the same reason, Plaintiff has failed to state a claim against MPSI upon which relief may be granted.  This is why the Court should consider MPSI's motion first – because when it does, and when it inevitably grants the motion and dismisses MPSI (as the Court presumably would have done with regard to Gonzalez and Ponder, had Plaintiff not conceded the obvious and voluntarily dismissed them), MGI will remain the only defendant and venue will remain improper.

8.      Apart from now alleging that he was employed by MPSI rather than MGI, and a handful of grammatical edits and corrections, the factual allegations in Plaintiff's First Amended Complaint and his Second Amended Complaint are identical.  Plaintiff's allegation that he "was fired" can now only be read to mean that he was fired *by his employer MPSI* – and, of course, that termination is the ultimate event alleged to give rise to his claims against MGI.  As discussed in the Motion, Plaintiff has alleged that he reported concerns about MGI's compliance program, and its adherence to the stipulated order and Deferred Prosecution Agreement referenced in his complaint, but the existence of those documents is not an "event or omission giving rise to the claim," and Plaintiff continues to allege – accurately – that the stipulated order

between MGI and the FTC arose in Illinois, and the DPA "arose" in a proceeding pending in Pennsylvania.  [Second Amended Complaint (Doc. 21) ¶¶ 11-15.] Plaintiff has not introduced evidence sufficient to sustain his burden to prove that a "substantial part of the events or omissions giving rise" to his claims against MGI occurred in this District.

9.      For all of the foregoing reasons, and as set forth in more detail in the Motion, Plaintiff has not established that venue is proper in this District for his claims against MGI. Plaintiff's gamesmanship in selecting this Division is described in detail in the Motion, including the fact that he initially attempted to file in the Northern District and represented to an Administrative Law Judge that he had done so.  Plaintiff makes no effort in the Response to explain the factual nexus to this Division, or to rebut (or even address) MGI's argument and evidence that he purposefully filed suit in the *wrong* venue.  The Court should find that venue is improper under Section 1391(b), grant the Motion, and dismiss Plaintiff's claim.

**B.      Alternatively, even if venue is proper, the Court should exercise its discretion to transfer the case to the Northern District (or alternatively the Sherman Division).**

10.      Even if the Court determines that venue is proper in this District and declines to dismiss the case for improper venue, the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer the case to the Northern District of Texas, or alternatively to the Sherman Division of this District, each of which is a "district or division where it might have been brought." Plaintiff does not argue in the Response that he *could not* have brought suit in either Dallas or Sherman.  Rather, his contention is that the public and private interest factors weigh against transfer.  He is mistaken.

**1.      The private factors favor transfer.**

11.      The "private factors" are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Durrett v. Walmart, Inc.*, No. 2:18-CV-00332-JRG, 2018 WL 5630521, at *2 (E.D. Tex. Oct. 31, 2018) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).

12.     MGI demonstrated in the Motion that the first private factor – the ***relative ease*** of access to source of proof – favors transfer.   The analysis focuses on "where documentary evidence, such as documents and physical evidence, are stored." *Durrett*, 2018 WL 5630521, at *2.   MGI is headquartered in Dallas and maintains its records there.   Plaintiff worked for MPSI in Frisco, Texas, within the Sherman Division.   Plaintiff does not dispute these facts.   Instead, he argues that "local documents will have little relevance here" because his impression is that MGI does not have many relevant documents, and because he intends to seek third-party discovery from out of state witnesses.   [Response (Doc. 21) at pp. 7-8.] Plaintiff does not contend or attempt to demonstrate that there are *any* "sources of proof" in the Texarkana Division.   The fact that MGI allegedly has fewer documents in its possession than Plaintiff's counsel would have expected does not make the factor neutral, because the test is relative ease of access, and it is ***easier*** to access MGI's documents where they are located.   The factor favors transfer.

13.     MGI demonstrated that the second private factor – the availability of compulsory process – also favors transfer.   With regard to out of state witnesses, both MGI and Plaintiff agree that the factor is neutral.   [Motion ¶ 46; Response at pp. 9-10.] Plaintiff does not dispute that there are several likely witnesses who work or worked for MPSI in Frisco, or who are employed by MPSI but work in MGI's headquarters in Dallas.   [Motion, ¶ 46.] Instead, he argues without any support that "this factor relates to nonparty witnesses" and that "the likelihood that MGI or MPSI would have to subpoena these current employees to defend them in

this or any other litigation is nonsense." [Response at p. 9.] MGI has no reason to believe that any current MPSI employee would refuse to attend trial if requested. However, there is also no guarantee that the *many* local witnesses Plaintiff identified in the administrative proceeding will remain employed by the time of trial,[1] and in any event, the question is whether compulsory process is *available* if it is *necessary* – and Plaintiff concedes that the Northern District and "the Sherman Division would have subpoena power whereas Texarkana would not." [Response, at p. 9.] The factor favors transfer.

14.    The third private factor – the cost of attendance for willing witnesses – "is probably the single most important factor in a transfer analysis." *Durrett*, 2018 WL 5630521, at *3. Plaintiff does not dispute that the cost of attendance for willing residents of the Dallas-Fort Worth area would be greater in Texarkana than in either potential transferee venue. Both parties agree that there are a number of relevant out-of-state trial witnesses, including three who were deposed during the administrative proceeding.[2] In the Response, in addition to the "known" witnesses, Plaintiff has identified a new cast of several dozen out-of-state witnesses (individual and corporate), none of whom were ever disclosed during the administrative proceeding, whom he now claims to believe are "key witnesses in this case" with "knowledge of relevant facts," including witnesses in New York City; Newark; Atlanta; Detroit; Chicago; Minneapolis; Miami; Tempe; Boise; metropolitan St. Louis; metropolitan Washington, D.C.; metropolitan Philadelphia; metropolitan Providence, Rhode Island; "Connecticut," Bentonville, Arkansas; Oxford, Alabama; and Sioux Falls, South Dakota, as well as in Vancouver and Ottawa, Canada, and Manchester, England. [Response, at pp. 11-14.]

---

[1] For example, John Tyson, who resides in Dallas, was an MPSI employee when he gave deposition testimony during the administrative proceeding. He is no longer employed by MPSI. If, for some reason, he were to become reluctant to attend trial willingly, this Court would not be able to compel his presence.
[2] MGI contends that the Court should not permit much, if any, discovery beyond what occurred during the administrative proceeding, but will reserve these arguments for the anticipated scheduling conference.

**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**                    **Page 7**

15.     In the Motion, MGI stated the obvious:  for out-of-state trial witnesses required to travel by air, it is *far* easier to get to the Dallas area than it is to get to Texarkana.  [Motion, ¶ 50.]  Plaintiff does not dispute this, and that should be the end of the inquiry.  However, Plaintiff has elected to seize on a (still) undisputed fact recited by MGI – that the only commercial flights to Texarkana are from DFW Airport – and turn it on its head.  Plaintiff posits that "experienced air travelers to Texarkana from the East Coast are aware that the shortest distance to Texarkana from the East coast is through the Shreveport, Louisiana, Regional Airport."  [Response, at p. 14.]  Plaintiff wants these witnesses fly to Atlanta, catch a flight to Shreveport, and then drive 78 miles to Texarkana, and he argues that this is *a more convenient way to get to Texarkana* than by connecting directly through DFW.

16.     Even if that were true (it is not), the argument misses the point.  The relevant question is not the best way to get to Texarkana, it is whether the cost of attendance for the dozens of out-of-state witnesses would be less if the trial were held in Dallas or in the Sherman Division (presumably in the Plano courthouse), than if the trial were held in Texarkana.  The Court may take judicial notice of the fact that non-stop air travel to Dallas is available from all but one city or metropolitan area in which any of the out-of-state witnesses lives – including Sioux Falls, but excluding Oxford[3] – and is not available to Texarkana from any of those cities (other than the flight from Atlanta to Shreveport that Plaintiff deems "close enough").  There is no dispute that "the Convenience to Witness Factor is the most important."  [Response, at p. 10.]  There can be no serious dispute that the convenience for the 41 out-of-state witnesses *identified by Plaintiff* would be far greater, and the cost of attendance far lower, in the Northern District or in the Sherman Division rather than in Texarkana.  This factor strongly favors transfer, perhaps

---

[3] https://www.sfairport.com/flights-travel/destinations.  Oxford, Alabama is 57 miles from Birmingham, from which a representative of MGI agent El Puentecito could catch a direct flight to Dallas.

to the point of compelling it.  In summary, MGI established in the Motion that three of the four public factors, including the most important one, favor transfer, and that the fourth factor is neutral.  The allegations in the Response, including the introduction of the new cast of characters, only serve to confirm that conclusion.

### 2.    The public factors favor transfer.

17.    The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Volkswagen I*, 371 F.3d at 203. Plaintiff does not dispute MGI's contention that the third and fourth public factors are neutral. MGI contends that the "court congestion" factor is neutral.  Plaintiff has introduced what purports to be evidence of the number of civil actions filed in the three Divisions during the first four months of 2019, in an attempt to show that this factor "significantly" favors transfer, but fails to account for the fact that there are more *judgeships* in the Northern District's Dallas Division and in the Sherman Division.  The apples-to-oranges comparison is unfair.  At most, the "court congestion" factor very slightly favors this Court retaining jurisdiction.

18.    Plaintiff concedes that the second public factor – the local interest in having localized interests decided at home – favors transfer to Dallas.   [Response, at pp. 16-17.] Plaintiff sees only a "slight local interest," but in fact, MGI and MPSI are both headquartered in Dallas, and many of the alleged events and omissions that gave rise to Plaintiff's claims occurred either in Dallas or in MPSI's Frisco, Texas, office, within the Sherman Division.   In the Response, Plaintiff has finally admitted that Texarkana *does not have any local interest*. [Response, at p. 17.]  Far from "making this factor essentially neutral" as between Texarkana and

Sherman, the complete lack of local interest is the best evidence yet that Plaintiff filed suit here as a matter of gamesmanship rather than practicality or principle.

**C.**   **MPSI's presence as a defendant does not alter the discretionary transfer analysis.**

19.    As noted above, MPSI has filed a motion to dismiss the claims against it because Plaintiff failed to exhaust his administrative remedies by identifying MPSI as a respondent in his OSHA complaint or in the administrative proceeding.  The Court should resolve MPSI's motion before considering venue.  However, if the Court determines that Plaintiff's claims against MPSI should not be dismissed, or if the Court for any other reason conducts the "discretionary transfer" analysis with both MGI and MPSI in mind, the result is the same, because the witnesses are the same, the claims are the same, the "events and omissions" are the same, and the utter lack of connection to Texarkana is the same.  The public and private factors favor transfer, and the Court should exercise its discretion to transfer the case to the Northern District's Dallas Division, or alternatively, to the Sherman Division.

**CONCLUSION**

For the foregoing reasons and those set forth more fully in the Motion, MGI respectfully requests that the Court grant the Motion and dismiss all of Plaintiff's claims, causes of action, and requests for relief pleaded against MGI, or alternatively that the Court determine that this Division is an improper venue and transfer this case to the Northern District of Texas; or in the further alternative, that the Court exercise its discretion to transfer the case to the Northern District of Texas, Dallas Division, or to the Sherman Division of this District.  MGI additionally requests that the Court grant all other relief, general or special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,


By:_____*/s/ John M.  Barcus*_____
GARY D.  EISENSTAT
Texas State Bar No.  06503200
gary.eisenstat@ogletree.com
JOHN M.  BARCUS
Texas State Bar No.  24036185
john.barcus@ogletree.com

**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  (214) 987-3800
Fax:  (214) 987-3927

**ATTORNEYS FOR DEFENDANTS**


**CERTIFICATE OF SERVICE**

The foregoing instrument was filed using the Court's CM/ECF system on June 5, 2019, which will transmit a copy to all counsel of record.


*/s/ John M.  Barcus*_____
JOHN M.  BARCUS


38701301.1