# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| **JUAN LOZADA-LEONI,** § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | Civil Action No. 5:19-cv-00011-RWS-CMC |
| **MONEYGRAM INTERNATIONAL,** § | |
| **INC., JUAN MANUEL GONZALEZ and** § | |
| **CHRISTOPHER PONDER in their** § | |
| **official and individual capacities,** § | |
| § | |
| *Defendants.* § | |

## DEFENDANT MONEYGRAM PAYMENT SYSTEMS, INC.'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS

GARY D. EISENSTAT
Texas State Bar No. 06503200
gary.eisenstat@ogletree.com
JOHN M. BARCUS
Texas State Bar No. 24036185
john.barcus@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone: (214) 987-3800
Fax: (214) 987-3927

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

                                                                                               **Page**

**PROCEDURAL RECAP AND OVERVIEW** ..............................................................................1

**ARGUMENT AND AUTHORITY** ............................................................................................2

      A.      **Plaintiff admittedly failed to name MPSI as a respondent, and his excuses for not doing so are legally invalid. He failed to exhaust, and the Court must dismiss.** ..............................................................................................................2

      B.      **Plaintiff had an "opportunity" to exhaust his remedies against MPSI.** ...................7

      C.      **The Northern District and the Sherman Division *are* "clearly more convenient;" if the Court does not dismiss, it should transfer.** ................................8

**CONCLUSION** ..........................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bozeman v. Per-Se Technologies, Inc.*,
    456 F. Supp. 2d 1282 (N.D. 2006)......................................................................................4, 6

*Durrett v. Walmart, Inc.*,
    No. 2:18-CV-00332-JRG, 2018 WL 5630521 (E.D. Tex. Oct. 31, 2018)................................8

*Hanna v. WCI Comms., Inc.*,
    No. 4-80595-CIV, 2004 WL 6072492 (S.D. Fla. Nov. 29, 2004) .........................................4, 6

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ....................................................................................................8

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ....................................................................................................8

*Wadler v. Bio-Rad Labs., Inc.*,
    141 F. Supp. 3d 1005 (N.D. Cal. 2015) ........................................................................3, 4, 5, 6

*Wallace v. Tesoro Corp.*,
    796 F.3d 468 (5th Cir. 2015) ........................................................................................3, 4, 5, 6

**Federal Statutes**

18 U.S.C. § 1514A(a) ......................................................................................................................3

18 U.S.C. § 1514A(b)(1)(A) ...........................................................................................................2

28 U.S.C. § 1404(a) ........................................................................................................................2

**Regulations**

29 C.F.R. § 1980.103(a)..................................................................................................................2

29 C.F.R. § 1980.103(c)..................................................................................................................2

29 C.F.R. § 1980.103(d) .................................................................................................................2

**DEFENDANT MSPI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant MPSI[1] files its Reply in Support of its Motion to Dismiss ("Motion") [doc. 23] and states:

**PROCEDURAL RECAP AND OVERVIEW**

1. As the case currently stands, Plaintiff's live pleading is his Second Amended Complaint [Doc. 21], and MGI and MPSI are the only two defendants. MGI filed its Motion to Dismiss for Improper Venue, or Alternatively, Motion to Transfer Venue, and Brief in Support (the "MGI Motion") [doc. 5] on April 11, 2019. Briefing on the MGI Motion is closed.[2] MPSI filed the present Motion on June 5, 2019. Plaintiff filed his Response in Opposition to the Motion ("Response") [doc. 34] on June 25, 2019. Both motions are set for oral argument on August 8, 2019.

2. In the Motion, MPSI first moved to dismiss Plaintiff's claims against MPSI because he failed to exhaust his administrative remedies. MPSI's argument is simple: although MPSI employed Plaintiff, he did not name it as a respondent in his DOL Complaint. His failure to do so deprives the Court of jurisdiction and/or means that he has failed to state a claim against MPSI upon which relief may be granted. Plaintiff argues that (1) he was not *required* to expressly name MPSI in order to exhaust his administrative remedies, because his DOL Complaint gave "sufficient notice," or (2) he should be excused because he did not have an "opportunity" to exhaust his remedies with respect to MPSI. The authority Plaintiff cites does not support these conclusions; to the contrary, his leading case (and the cases cited in the Motion) make clear that Plaintiff's failure to *at least* name MPSI in the body of the DOL Complaint means he failed to exhaust his remedies,

---

[1] Terms defined in the Motion have the same meaning herein.
[2] Plaintiff filed his Response in Opposition to All Defendants' Jurisdictional Motions [doc. 19] on May 15, 2019. MGI filed its Reply [doc. 24] on June 5, 2019. Plaintiff filed his Sur-Reply [doc. 32] on June 24, 2019.

---

**DEFENDANT MPSI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**  Page 1

and that the Court must dismiss his claims.

3.   Alternatively, MPSI moved to transfer the case to the Northern District of Texas, or to the Sherman Division of this District, pursuant to 28 U.S.C. § 1404(a), for the reasons already articulated in the MGI Motion. Plaintiff's primary argument in response – that Texarkana is geographically closest to many members of his laundry list of fact witnesses – does not address the question of *convenience*, which is the single most important factor in the analysis, and plainly favors either alternative venue over Texarkana. If the Court does not dismiss Plaintiff's claims against MPSI, it should transfer this case.

## ARGUMENT AND AUTHORITY

The Court should grant the Motion for the following reasons:

**A.   Plaintiff admittedly failed to name MPSI as a respondent, and his excuses for not doing so are legally invalid. He failed to exhaust, and the Court must dismiss.**

4.   The relevant section of SOX requires an employee who alleges discharge in violation of SOX to seek relief by "filing a complaint with the Secretary of Labor" or "if the Secretary has not issued a final decision within 180 days of the filing of the complaint . . . bringing an action at law or in equity for de novo review in the appropriate district court of the United States." 18 U.S.C. § 1514A(b)(1)(A). A DOL complaint must be filed within 180 days of the alleged violation,[3] and "an employee who believes that he or she has been retaliated against <u>by a covered person</u> in violation of the Act may file, or have filed on the employee's behalf, <u>a complaint alleging such retaliation</u>." 29 C.F.R. § 1980.103(a) (emphasis added). OSHA is the agency with the DOL's delegated authority to receive such complaints. 29 C.F.R. § 1980.103(c). Under *Wallace v. Tesoro Corp.*, 796 F.3d 468, 475 (5th Cir. 2015), there is no longer any dispute that this is a jurisdictional exhaustion requirement. Plaintiff agrees. [Response at p. 10.]

---

[3] 29 C.F.R. § 1980.103(d).

5. SOX applies to (1) a "company with a class of securities registered under section 12 of the Securities Exchange Act of 1934," as well as (2) "any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company" and (3) "any officer, employee, contractor, subcontractor, or agent of such company." 18 U.S.C. § 1514A(a). MGI and MPSI are separately "covered persons" under the Act. MGI is a "covered person" under the first provision, MPSI is a separate "covered person" under the second, and dismissed defendants Gonzalez and Ponder were "covered persons" under the third.

6. In support of his contention that "notice to MPSI was sufficient" and that a plaintiff may bring a civil action against a covered person not named in his DOL complaint, Plaintiff ignores *Wallace* relies exclusively on *Wadler v. Bio-Rad Labs., Inc.*, 141 F. Supp. 3d 1005, 1010 (N.D. Cal. 2015), and two Title VII cases cited in that opinion. Read carefully, *Wadler* actually supports the conclusion that Plaintiff's claims against MPSI are barred. In *Wadler*, the plaintiff filed an administrative complaint in the form of a letter faxed to the Department of Labor:

> The DOL Complaint states that it is a 'complaint under the Sarbanes-Oxley Act against Bio-Rad Laboratories, Inc. in Hercules, California.' The Complaint goes on to state, 'I was the Executive Vice President, Secretary and General Counsel of Bio-Rad until I was terminated on June 7, 2013, by the Chief Executive Officer of the corporation, Norman Schwartz, for engaging in whistleblowing activities.'

*Wadler*, 141 F. Supp. 3d at 1010. That is, Schwartz was not named as a respondent, but was referenced by name in the body of the complaint.

7. Well after the 180-day limitations period expired, the plaintiff amended his *administrative* complaint to "clarify that he sought relief from both Bio-Rad and the members of its Board of Directors individually – not just against the Company itself. . . . He stated in the Motion to Amend that although it might not be necessary to amend the complaint because the Board Members were 'sufficiently identified' in the original DOL Complaint, he sought to do so

'in an abundance of caution to ensure that he was able to obtain full relief against the persons who actually made the decision to retaliate against him by terminating his employment.'" *Id.* at 1011.

8. The plaintiff then exercised his "kick out" option and filed a civil action, naming the company and all of its board members (including Schwartz) as defendants. Schwartz moved to dismiss, relying on the *Bozeman* and *Hanna* cases cited in the Motion, among other authority. The court denied his motion, reasoning that being mentioned in the body of the complaint was sufficient.[4] The "non-Schwartz" members of the board, named only in the amended administrative complaint, also moved to dismiss, because the plaintiff "did not add these defendants to his administrative complaint until after the 180-day limitations period had expired[.]" *Id.* at 1019-1020. The plaintiff argued "that his claims are timely as to all of the individual defendants because the original DOL Complaint was sufficient to exhaust his claims as to all of those defendants." *Id.* at 1020. The court rejected that argument and held that:

> even under the liberal pleading standard that applies to administrative complaints, the original DOL Complaint did not give the remaining members of the Board fair notice that they would be named as individual defendants in this action. Wadler does not cite any specific conduct on the part of these individuals that would have put them on notice that he was accusing them of retaliatory conduct. . . . Because Wadler did not give any Board members except Norman Schwartz fair notice in his original administrative complaint . . . the Court concludes that the Sarbanes-Oxley claims against all of the individual defendants are untimely.

*Id.* at 1021-1022. Thus, even under *Wadler*, Plaintiff's claims against MPSI are barred, because it is undisputed that he ***did not name MPSI*** anywhere in the caption or body of any iteration of his DOL Complaint. The only complaint submitted by Plaintiff's counsel to the Department of Labor on September 28, 2017 – 177 days after the last alleged retaliatory action – refers to MGI as the only respondent. No other "covered person" is mentioned anywhere in the caption or body of the DOL Complaint. [Motion Ex. 2 (doc. 23-2).] He never amended.

---

[4] The *Wallace*, *Hanna*, and *Bozeman* courts would have reached a different conclusion on the same facts.

**DEFENDANT MPSI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**  Page 4

9. Next, in the ALJ proceeding, Plaintiff filed two very detailed complaints – an Original Complaint and an Amended Complaint. [Motion Ex. 8-9 (doc. 23-8 and 23-9).] As discussed in the Motion, MGI is the only named respondent, and, while Plaintiff did mention Ponder and Gonzalez in the body of both documents, **MPSI is not named**. Thus, *even if* the ALJ complaints filed well over 180 days after the last alleged retaliatory act were to somehow "count" as amendments to the DOL Complaint, and *even if* those amendments related back for limitations purposes, and *even if Wadler* applies, rather than *Wallace* and the other on-point cases cited in the Motion, MPSI is in the same position as the non-Schwartz individual defendants in *Wadler*. Plaintiff failed to mention MPSI or allege any bad conduct on its part, even though it is plainly a "covered person" under the Act just like the individual defendants were.

10. Plaintiff also offers no good reason why the Court should rely upon *Wadler* and ignore *Wallace*, which is directly on point. The plaintiff in *Wallace* argued that SOX "contains no exhaustion requirement and that, to the contrary, merely filing a charge with OSHA that triggers an investigation is enough to permit a future district-court filing that is not limited in scope." *Wallace*, 796 F.3d at 475. That is also what Plaintiff wants to do – proceed on a district court filing that is outside the scope of his DOL Complaint. In *Wallace*, the greater "scope" was in terms of unalleged protected activities rather than unidentified covered persons, but that is a distinction without a difference. The Fifth Circuit held that there is an exhaustion requirement, and that "it would thwart the administrative scheme to allow plaintiffs to sue on claims that the agency never had the chance to investigate and attempt to resolve." *Id.* at 475. Because Plaintiff never gave the Department of Labor the chance to investigate his claims against MPSI, under *Wallace*, those claims are now barred.

11.     Plaintiff also fails to distinguish *Bozeman v. Per-Se Technologies, Inc.*, 456 F. Supp. 2d 1282 (N.D. 2006) and *Hanna v. WCI Comms., Inc.*, No. 4-80595-CIV, 2004 WL 6072492 (S.D. Fla. Nov. 29, 2004). Those plaintiffs brought civil actions against covered persons who were mentioned in the body of their respective DOL complaints. The *Bozeman* court held that "the Plaintiff never provided OSHA with an opportunity to issue a final decision within 180 days of his filing his administrative complaint as to the claims he raises against [the two individuals] because he failed to specifically name them in the heading of his administrative complaint." *Bozeman*, 456 F. Supp. 2d at 1358. Plaintiff urges the Court to disregard these cases because they "assume that complaint filed in an administrative pleading must meet the same pleading requirements as a complaint filed in federal court." [Response at p. 16.] That reasoning appears nowhere in either opinion. The point made by both courts is that even if naming a covered person in the body of a DOL complaint is enough to put the *covered person* "on notice" for exhaustion purposes, as the *Wadler* case suggests, failing to specifically identify a covered person as a respondent means that *OSHA* is never put on notice that it is supposed to investigate that person's activities. *Bozeman*, 456 F. Supp. 2d at 1358 (quoting *Hanna*, 2004 WL 6072492, at *7). Plaintiff cites no authority holding that merely referring to MPSI in the body of his DOL complaint would have put OSHA on notice. But it hardly matters. As discussed above, Plaintiff *never referred to MPSI in the body of the DOL Complaint.* Thus, even if *Bozeman* and *Hanna* applied too strict of a standard, avoiding them does not help Plaintiff's case.[5] The answer to the pending question is

---

[5] Plaintiff's only other argument, that the DOL complaint against MGI was sufficient to exhaust his remedies vis-à-vis MPSI, is a seeming "throwaway" in his fact section, and is rooted in what Plaintiff acknowledges is outdated law. The provision of SOX discussed above, in which it is made clear that parents, subsidiaries, and employees are all separately "covered persons" subject to liability, was enacted in 2010. [*See* Response at p. 7.] Prior to that, there was some question regarding whether non-public subsidiaries were even subject to liability under SOX, and Plaintiff observes that some administrative law judges found that if "the parent company and its wholly-owned subsidiary were so intertwined as to represent one entity," the subsidiary was subject to liability. Congress resolved the uncertainty in 2010 and, in any event, MPSI does not dispute that it is a non-public subsidiary of MGI or that it is a "covered person" under SOX. However, none of that has anything to do with "whether MPSI and MGI are substantially identical entities

clear: yes, Plaintiff was required to name MPSI as a respondent or at least in the body of his DOL Complaint in order to exhaust his remedies.

### B. Plaintiff had an "opportunity" to exhaust his remedies against MPSI.

12. As a last gasp, while Plaintiff concedes the exhaustion requirement and his failure to abide by it, he argues that "there was no opportunity to exhaust" because "OSHA dismissed Plaintiff's complaint within roughly two weeks of its filing. Because OSHA conducted no investigation and conciliation process here, there was no opportunity to exhaust the administrative process and separately name MPSI." [Response at p. 8.] Hardly. Plaintiff did not learn of MPSI's existence for the first time after he filed this civil action; it was his employer and was identified as such in the offer letter he received and accepted in 2016. [MGI Motion Ex. 1 (doc. 5-1).] Plaintiff's "opportunity" to exhaust came when he elected not to name MPSI in the caption or the body of his DOL Complaint. He could have amended his DOL Complaint to add MPSI before OSHA dismissed it (he would have had to act quickly, given that he filed on day 177 of the 180-day limitations period). He chose not to do so.

### C. The Northern District and the Sherman Division *are* "clearly more convenient;" if the Court does not dismiss, it should transfer.

13. If the Court does not dismiss Plaintiff's claims against MPSI, it should nonetheless exercise its discretion to transfer the claims to either the Northern District of Texas, or to the Sherman Division of this District. Plaintiff does not dispute MPSI's contentions and arguments that: (1) the case *could have been brought* in the Northern District or in the Sherman Division; (2) the relevant standard is whether one of those venues is "clearly more convenient" than the Texarkana Division; and (3) the Court must make its determination by applying the "public and

---

for purposes of notice of the underlying DOL charges" [Response at p. 8] or whether (or what amount) of "notice" is sufficient to exhaust remedies against an unnamed covered person.

**DEFENDANT MPSI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**     Page 7

private interest factors" articulated in *In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013), and *In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008), among many other cases.[6]

14.     No one factor is dispositive, but "the convenience of the witnesses is probably the single most important factor in a transfer analysis." *Durrett*, 2018 WL 5630521, at * 3 (citing cases). Regarding the public factors, "the traditional deference afforded to plaintiff's choice of forum . . . is less for intra-district transfers. This is especially true when there is no nexus between the plaintiff's choice of forum and the parties, witnesses, or facts of the case." *Id.* at *4 (quoting *Radmax*, 720 F.3d at 290). Courts are "ill-advised to deny transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses giving rise to the case are in the transferee court." *Id.*

15.     As Plaintiff conceded in briefing on the MGI Motion, the citizens of Texarkana have no "local interest" in the resolution of this dispute. [Response to MGI Motion at p. 17.] By contrast, MPSI has introduced uncontroverted evidence that: (1) it is headquartered in Dallas, as is MGI, the only other remaining defendant; (2) MPSI maintains its personnel records for all offices in Dallas, as does MGI; (3) Plaintiff worked for MPSI in its Frisco, Texas, office, which is within the Sherman Division, and was informed of his termination there; and (4) MPSI has no office or employees within the Texarkana Division. [Motion at p. 3 and Ex. 1.] This undisputed evidence all weighs in favor of transfer:  for willing witnesses (*e.g.*, current MPSI employees at its Dallas headquarters or its Frisco office, including three who were deposed during the

---

[6] The *private factors* are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." The *public factors* are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Durrett v. Walmart, Inc.*, No. 2:18-CV-00332-JRG, 2018 WL 5630521, at * 2 (E.D. Tex. Oct. 31, 2018).

---

administrative proceeding, and two more identified by Plaintiff as having relevant knowledge), the relative cost of attendance is lower if trial is held Dallas or Sherman than in Texarkana; to the extent MGI and MPSI's personnel records are relevant, they are in Dallas; to the extent documents at MPSI's Frisco office are relevant, they are much easier to access from Dallas or Sherman than from Texarkana; and, of course, there *is* a local interest in both the Northern District and the Sherman Division.[7]

16. Plaintiff also has identified more than three dozen "likely witnesses" living out of state whom he claims have "knowledge of relevant facts," and whom he apparently presumes will willingly travel to Texas to testify on his behalf.[8] Plaintiff relies on that presumption to avoid transfer; without it, he has no "private factor" argument to make. In particular, Plaintiff argues that "it cannot be seriously disputed that for the witnesses located in the Midwest, along the Eastern seaboard, and in the Georgia-Florida area, Texarkana is geographically closer than Sherman. Therefore, this factor weighs significantly in favor of maintaining venue here." [Response at p. 19.]

17. That is simply wrong. To take just a few examples, there are *dozens* of daily non-stop flights from New York, Atlanta, and Chicago, to DFW Airport.[9] Plaintiff indicated in prior briefing that "experienced air travelers to Texarkana from the East Coast are aware that the shortest

---

[7] Plaintiff is hyper-focused on his belief that this is not a document-intensive case, and that some of MPSI's documents are in Gonzalez's office in Florida or stored on email servers in Minnesota. That may be true, but misses the point. To the extent that there *are* relevant MPSI documents, they are mostly in Dallas or Frisco (and none of them are in Texarkana).

[8] In particular, Plaintiff has identified fact witnesses living in Alabama, Arizona, Arkansas, Connecticut, Florida, Georgia, Idaho, Illinois, Maryland, Michigan, Minnesota, Missouri, New Jersey, New York, Pennsylvania, Rhode Island, and South Dakota, including multiple witnesses in most of those states, as well as witnesses in Canada and the United Kingdom. [Response to MGI Motion at pp. 11-14.]

[9] The Court may take judicial notice of this fact, and undersigned counsel represents to the Court that a search of Google Flights for non-stop flights from New York to Dallas, departing on July 26, 2019, revealed 36 choices; 26 from Atlanta to Dallas; and 23 from Chicago to Dallas. Southwest Airlines offers another 18 non-stop flights into Dallas Love Field from those cities. There is no nonstop service from any of those cities to Texarkana.

---

**DEFENDANT MPSI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**                                           **Page 9**

distance to Texarkana from the East Coast is through the Shreveport, Louisiana Regional Airport." [Response to MGI Motion at p. 14.] Perhaps so, but "what's the quickest way to Texarkana" is not the question. The question is *convenience* of the various venues. Taking a flight from New York to Atlanta to Shreveport and then driving "78 miles from the Shreveport airport to the Texarkana courthouse" is clearly less convenient than flying non-stop to DFW and driving 18 miles to the courthouse in Dallas or 25 miles to the courthouse in Plano, even if Texarkana is marginally "geographically closer" (as the crow flies) to some witnesses.

18. Plaintiff's only other argument against transfer is "judicial economy." Plaintiff relies on apples-to-oranges data showing the number of civil actions filed in each division in 2019 but ignoring the differing number of judgeships. [Reply in Support of MGI Motion at p. 9.] Plaintiff has offered no additional evidence, other than a copy of a lawsuit filed against MGI in January, which MGI has moved to dismiss, but he has cited no authority for the proposition that pending litigation elsewhere is a factor to be considered.[10] He has introduced a new argument that the court congestion factor is important because "the speed with which Plaintiff gets to trial is uniquely important here" because MGI's stock is trading at a "perilously low" price. [Response at p. 6.][11] Plaintiff has offered no authority in support of his contention that his apparent worries about MGI's stock price have any legal bearing on whether the Court should exercise its discretion to transfer Plaintiff's claims against MPSI to a different venue.

---

[10] The Court may take judicial notice of Defendants' Motion to Dismiss [doc. 62] and Memorandum in Support of Motion to Dismiss [doc. 63], filed on May 16, 2019, in *Chew, et al. v. MoneyGram International, Inc.*, *et al.*, Case No. 1:18-cv-07537, in the United States District Court for the Northern District of Illinois, Eastern Division. For the reasons stated in those documents, MGI contends that the claims in the lawsuit are utterly lacking in merit.

[11] It is curious that Plaintiff now insists that "time is of the essence." The ALJ proceeding was initially set for final hearing in August 2018. Plaintiff sought and obtained a continuance until January 2019. On the eve of that hearing, he filed another motion and requested a continuance until June 2019. A week after obtaining that relief, he announced his intention to exercise the "kick out" and demand a do-over in this court, causing further delay.

## CONCLUSION

For the foregoing reasons and those set forth more fully in the Motion, MPSI respectfully requests that the Court grant the Motion and dismiss all of Plaintiff's claims, causes of action, and requests for relief pleaded against MPSI with prejudice, or, alternatively, that the Court exercise its discretion to transfer the case to the Northern District of Texas, Dallas Division, or to the Sherman Division of this District. MPSI additionally requests that the Court grant all other relief, general or special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

By: _/s/ John M. Barcus_
GARY D. EISENSTAT
Texas State Bar No. 06503200
gary.eisenstat@ogletree.com
JOHN M. BARCUS
Texas State Bar No. 24036185
john.barcus@ogletree.com

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas 75225
Telephone: (214) 987-3800
Fax: (214) 987-3927

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The foregoing instrument was filed using the Court's CM/ECF system on July 1, 2019, which will transmit a copy to all counsel of record.

_/s/ John M. Barcus_
JOHN M. BARCUS

39106937.1