**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **JUAN LOZADA-LEONI** | § | |
| | § | |
| **V.** | § | **No.  5:19CV11-RWS-CMC** |
| | § | |
| **MONEYGRAM INTERNATIONAL,** | § | |
| **INC. and MONEYGRAM PAYMENT** | § | |
| **SYSTEMS, INC.** | § | |

---

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

---

The above-referenced case was referred to the undersigned United States Magistrate Judge

for pre-trial purposes in accordance with 28 U.S.C. § 636.  Before the Court are the following

pending motions:

> **Defendant MoneyGram International, Inc.'s Motion to Dismiss for Improper
> Venue, or Alternatively, Motion to Transfer Venue, and Brief in Support
> (Docket Entry # 5); and**

> **Defendant MoneyGram Payment Systems, Inc.'s Motion to Dismiss, or
> Alternatively, Motion to Transfer Venue, and Brief in Support (Docket Entry
> # 23).**

The Court, having reviewed the relevant briefing and hearing arguments of counsel August 8, 2019,

recommends Defendants' Rule 12(b)(1) motions to dismiss Defendant MoneyGram Payment

Systems, Inc. be **DENIED**.  The Court further recommends Defendant MoneyGram International,

Inc.'s motion to dismiss or to transfer under § 1406(a) be **DENIED**.  The Court further recommends

Defendants' alternative  § 1404(a) motion to transfer venue to the Sherman Division of the Eastern

District of Texas be **GRANTED**.

# I. BACKGROUND

This suit concerns the federal Sarbanes-Oxley Act of 2002 ("SOX"), "which protects those who blow the whistle on their employer's failure to comply with Securities and Exchange Commission reporting requirements." *Wallace v. Andeavor Corp.*, 916 F.3d 423, 425 (5th Cir.), *cert. denied*, 140 S. Ct. 206 (2019).   In his original complaint and First Amended Complaint, Plaintiff Juan Lozada-Leoni ("Plaintiff") sued MoneyGram International, Inc. ("MGI"), as well as Juan Manuel Gonzalez ("Gonzalez") and Christopher Ponder ("Ponder"), two managers that were allegedly involved in Plaintiff's termination.  On April 11, 2019, MGI filed its motion to dismiss for improper venue, or alternatively, motion to transfer venue.  Docket Entry # 5.  That same day, Gonzalez and Ponder each filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), asserting Plaintiff never filed an administrative complaint against them and thus failed to exhaust administrative remedies. Docket Entry #s 6, 7.

On May 16, 2019, Plaintiff filed his Second Amended Complaint ("SAC"), dismissing Gonzalez and Ponder and adding MoneyGram Payments Systems, Inc. ("MPSI") as a defendant, along with MGI (collectively, "Defendants").  *See* Docket Entry # 21.  According to the SAC, Plaintiff began work as a Senior Manager for the U.S. Regional Compliance Team for MPSI on October 18, 2016.  SAC at p. 7, ¶ 24. Plaintiff alleges that during his tenure at MPSI, "MGI had knowledge of, yet ignored, suspicious activities of several of its largest agents, including Wal-Mart, Schnucks, SuperValu, RaceTrac, Valero and CVS."  *Id.*, ¶ 29. Plaintiff alleges he witnessed compliance infractions and notified MGI management of those infractions, "but to no avail."  *Id.* at pp. 9-19.  Plaintiff alleges he was retaliated against for his complaints about MGI's illegal conduct. *Id*. at p. 19.  Plaintiff asserts Defendants violated the SOX by taking adverse employment actions

2

against him, including, but not limited to, termination and other forms of retaliation, because of his protected conduct under 18 U.S.C. § 1514A.  *Id.* at p. 22.

## II. DEFENDANTS' MOTIONS

### A.    MGI's assertions

Before the filing of the SAC, MGI filed a motion to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or in the alternative, motion to transfer venue under 28 U.S.C. § 1406(a) to the Northern District of Texas, Dallas Division.  At the time MGI filed its motion, Gonzalez and Ponder were the only other defendants, and they had both filed motions to dismiss.  MGI argued the Court should first address those motions and dismiss the individual defendants prior to deciding MGI's motion.  Docket Entry # 5 at p. 2.  According to MGI, the Court should then grant MGI's motion to dismiss "because the acts and omissions by MGI allegedly giving rise to Plaintiff's claim against MGI either were not done *by* MGI [but by MPSI] or did not occur in this District, and because MGI does not reside in this District."  *Id.* (emphasis in original).  Alternatively, and in addition, MGI moves the Court to transfer this case to the Dallas Division of the Northern District of Texas, or the Sherman Division of the Eastern District of Texas, pursuant to 28 U.S.C. § 1404.

### B.    MPSI's assertions

Following the filing of the SAC which removed the individual defendants and added MPSI as a defendant, MPSI filed its motion to dismiss, or alternatively, motion to transfer venue.  Docket Entry # 23.  Because Plaintiff did not name MPSI as a respondent in his administrative complaint filed with the Department of Labor ("DOL") and only sought relief against MGI, MPSI moves to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and/or pursuant to Rule

12(b)(6) for failure to state a claim against MPSI upon which relief may be granted.  *Id.* at p. 2. Alternatively, and in addition, if the Court determines it has subject matter jurisdiction and that Plaintiff has stated a claim upon which relief can be granted, MPSI moves the Court to transfer this case to the Dallas Division of the Northern District of Texas, or the Sherman Division of the Eastern District of Texas, pursuant to 28 U.S.C. § 1404. *Id.*

## C.    Plaintiffs' response

In his response, Plaintiff asserts he was not required to name MPSI in his administrative complaint. Docket Entry #34 at p. 5. "At all times during this proceeding, Plaintiff took the position, and takes the same position now, that MPSI's role in this dispute is insignificant, thus not requiring naming it as an individual defendant." *Id*. According to Plaintiff, even though his administrative complaint did not name MPSI, it gave MPSI fair notice of the charges against it and afforded OSHA the opportunity to resolve those charges administratively.  Plaintiff asserts there can be no doubt that both MPSI and OSHA were put on fair notice of Plaintiff's claims under SOX. *Id*.

Regarding MGI's alternative motion to transfer venue under § 1406(a), Plaintiff contends Defendants have  failed to demonstrate that the Eastern District of Texas is the wrong district. Relying on  28 U.S.C. § 1391(b)(2), Plaintiff contends venue is proper in the Eastern District of Texas because Plaintiff was terminated in this district.[1]  Finally, Plaintiff further asserts Defendants have failed to meet their burden under § 1404(a) in demonstrating the balance of convenience and

---

[1] At the August 8, 2019 hearing, Defendants' counsel made clear that if MGI is the only remaining party in this case, MGI argues venue is improper in the Eastern District of Texas under the general venue statute because MGI is a Delaware corporation with its principal place of business in Dallas, Texas and none of the relevant facts or omissions occurred with respect to MGI in the Eastern District of Texas.  Hearing Tr. (Docket Entry # 44) at 34:1-8; 34:22-35:4. According to Defendants' counsel, in the event the Court does not dismiss either MGI or MPSI, this case should be transferred under § 1404(a) to the "clearly more convenient venue, which is actually intra-district transfer to the Sherman" division of the Eastern District of Texas.  *Id*. at 40:24-41:3.

4

justice substantially favors transfer of this case to the Northern District of Texas or the Sherman Division of the Eastern District of Texas. Docket Entry #32 at pp. 8-10; *see also* Docket entry # 34 at pp. 18-21.

## D.    Defendants' replies

Defendants argue the cases relied upon by Plaintiff in support of his exhaustion arguments actually "make clear that Plaintiff's failure to *at least* name MPSI in the body of the DOL Complaint means he failed to exhaust his remedies, and that the Court must dismiss his claims" against MPSI. Docket Entry # 37 at pp. 1-2 (emphasis in original).  Regarding their alternate § 1404(a) motion to transfer the case to the Northern District of Texas, or to the Sherman Division of the Eastern District of Texas, Defendants assert Plaintiff's primary argument in response – "that Texarkana is geographically closest to many members of his laundry list of fact witnesses – does not address the question of *convenience*, which is the single most important factor in the analysis, and plainly favors either alternative venue over Texarkana." *Id*. at p. 2 (emphasis in original).

## III. STATUTORY OVERVIEW

### A.    Sarbanes-Oxley Act of 2002

In 2002, Congress passed the Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745 (2002), which established a private right of action for employees of certain companies who are discharged for, among other things, "provid[ing] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of [specified securities laws] . . . to . . . a person with supervisory authority over the employee." *Daly v. Citigroup Inc*., 939 F.3d 415, 422 (2d Cir. 2019) (quoting 18 U.S.C. § 1514A(a)(1)(C)). SOX protects employees from retaliation for engaging in protected activity, which is

> any lawful act done by the employee to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders. . . .

*Wallace v. Tesoro Corp.*, 796 F.3d 468, 474 (5th Cir. 2015) ("*Wallace I*") (quoting 18 U.S.C. § 1514A(a)). "Essentially, the employee has to provide information or assist in an investigation that he reasonably believes relates to one or more of six categories of laws and regulations: four specific types of fraud, a federal offense that relates to fraud against shareholders, or a rule or regulation of the SEC." *Wallace I*, 796 F.3d at 474.

A retaliation claim under § 1514A(a) requires an employee prove "by a preponderance of the evidence, that (1) he engaged in protected whistleblowing activity, (2) the employer knew that he engaged in the protected activity, (3) he suffered an 'adverse action,' and (4) the protected activity was a 'contributing factor' in the 'adverse action.'" *Wallace v. Andeavor Corp.*, 916 F.3d 423, 426 (5th Cir.), *cert. denied*, 140 S. Ct. 206 (2019) ("*Wallace III*") (quoting *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 259 (5th Cir. 2014) (footnote omitted) (quoting *Allen v. Admin. Review. Bd.*, 514 F.3d 468, 475-76 (5th Cir. 2008))). An employee's reasonable belief that conduct violates one of those six categories must be evaluated under both an objective and a subjective standard. *Wallace I*, 796 F.3d at 474 (citing *Allen*, 514 F.3d at 477). The objective standard examines whether the belief would be held by "a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Wallace I*, 796 F.3d at 474-75 (quoting *Allen*, 514 F.3d at 477).

A person averring retaliation in violation of SOX must first file a complaint with the

Secretary of Labor. *Wallace I*, 796 F.3d at 475 (citing 18 U.S.C. § 1514A(b)(1)(A)). If 180 days pass

from the filing of that complaint without a final decision, the complainant can sue. *Wallace I*, 796

F.3d at 475 (citing 18 U.S.C. § 1514A(b)(1)(B); also citing *Lawson v. FMR LLC*, —— U.S. ——,

134 S.Ct. 1158, 1163, 188 L.Ed.2d 158 (2014)).

## B.      Dodd-Frank Act of 2010

Following the financial crisis of 2007-08, Congress passed the Dodd-Frank Wall Street

Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010), which

amended a variety of federal statutory provisions that had been designed to regulate the financial

industry. *Daly*, 939 F.3d at 422. Dodd-Frank amended the Securities Exchange Act of 1934 to create

a private right of action against an employer who retaliates against a whistleblower for engaging in

one or more of three categories of protected activity including "making disclosures that are required

or protected under [SOX]." *Id.* (quoting 15 U.S.C. § 78u-6(h)(1)(A)(iii)). "The amended provision

extends § 1514A's protection to employees of public company subsidiaries and nationally

recognized statistical rating organizations (NRSROs)." *Lawson v. FMR L.L.C.*, 571 U.S. 429, 455,

134 S. Ct. 1158, 1174, 188 L. Ed. 2d 158 (2014).

## IV. APPLICABLE STANDARDS

A complaint must be dismissed if the court lacks subject matter jurisdiction over the

plaintiff's claim, FED. R. CIV. P. 12(b)(1), or if the plaintiff fails to state a claim upon which relief

may be granted, FED. R. CIV. P. 12(b)(6).

Defendants have presented their administrative exhaustion arguments under Rules 12(b)(1)

and 12(b)(6). The Second Circuit Court of Appeals recently considered whether SOX's

administrative exhaustion requirements are a jurisdictional prerequisite to suit, noting it had not

found clear guidance among the "sister circuits." *Daly*, 939 F.3d at 426-28. According to the Second

Circuit in *Daly*, the Fourth Circuit has assumed, without deciding, that a claimant's failure to exhaust

the statute's administrative remedies would deprive a district court of jurisdiction, citing as support

several district court cases and an administrative decision of the DOL. *Id.* at 426 (citing *Feldman v.

Law Enf't Assocs. Corp.*, 752 F.3d 339, 345 n.7 (4th Cir. 2014)). Of particular relevance here, the

court in *Daly* stated the Fifth Circuit similarly implied the SOX exhaustion requirements are a

jurisdictional prerequisite to suit. *Daly*, 939 F.3d at 426 (citing *Heaney v. Prudential Real Estate

Affiliates, Inc.*, 328 Fed. Appx. 314, 314 n.1 (5th Cir. 2009) (per curiam) (noting the court was

"satisfied that the plaintiff exhausted his administrative remedies under the Sarbanes-Oxley Act and

thus that the district court had jurisdiction over the matter")).

The Second Circuit concluded the text of SOX makes clear that Congress intended for its

administrative exhaustion requirements to be a jurisdictional prerequisite to suit in federal court,

noting the" statute's exhaustion requirements are included in the same provision—indeed, in the

same sentence—as its jurisdictional provision." *Daly*, 939 F.3d at 427.  According to the court in

*Daly*, "that provision expressly grants federal jurisdiction only when specific administrative remedies

have been exhausted:"

> (1) In general.--A person who alleges discharge or other discrimination by any person
> in violation of [the whistleblower protection provision] may seek relief under [this
> section], by–
>
> > (A) filing a complaint with the Secretary of Labor; or
> >
> > (B) if the Secretary has not issued a final decision within 180 days of
> > the filing of the complaint and there is no showing that such delay is
> > due to the bad faith of the claimant, bringing an action at law or
> > equity for de novo review in the appropriate district court of the
> > United States, which shall have jurisdiction over such an action

without regard to the amount in controversy.

*Id.* (quoting 18 U.S.C. § 1514A(b)(1)(A)-(B)).

The statute further provides that an employee asserting a SOX whistleblower claim must file her complaint with the Secretary of Labor "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." *Daly*, 939 F.3d at 427 (quoting 18 U.S.C. § 1514A(b)(2)(D)). "And the Secretary of Labor has, in turn, delegated the responsibility for adjudicating such a claim to OSHA." *Daly*, 939 F.3d at 427 (citing 29 C.F.R. § 1980.103(b)-(d)).

As explained by the Second Circuit, by the terms of the statute and its attendant regulations, a party may seek review of a SOX whistleblower claim in federal court under the following two circumstances:

> First, when OSHA fails to issue a final decision within 180 days of the filing of an administrative complaint, and 'there is no showing that such delay is due to the bad faith of the claimant,' 18 U.S.C. § 1514A(b)(1)(B), a party may seek relief by 'bringing an action at law or equity for de novo review in the appropriate district court of the United States.' *Id.* Second, review in federal court is possible if the party seeks review of a final order from OSHA within 60 days in 'the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation,' in which case the federal court's review on appeal is limited to the administrative record. . . .

*Daly*, 939 F.3d at 427-28.

"In either instance, however, for the federal court to have jurisdiction over the claim, the claimant must first commence an action with an adjudicating administrative agency." *Id.* at 428. The court in *Daly* concluded the administrative exhaustion requirements under SOX are jurisdictional and a prerequisite to suit in federal court. The Court agrees and will consider under Rule 12(b)(1) Defendants' arguments regarding Plaintiff's failure to exhaust administrative remedies

as to MPSI.

A motion to dismiss filed pursuant to Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Wright v. Common Ground Health Clinic, Inc.*, No. CV 16-11623, 2016 WL 4720011, at *2 (E.D. La. Sept. 9, 2016) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "At the outset [the Court] must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Wright*, 2016 WL 4720011, at *2 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); also citing 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2013) ("As many judicial decisions make clear, a motion under Rule 12(b)(1) may be used to attack two different types of jurisdiction defects.")). The Fifth Circuit has explained as follows:

> A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction on the face of the complaint. If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true. But the two motions are treated quite differently when matter outside the complaint is the basis of the attack.

*Wright*, 2016 WL 4720011, at *2 (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981) (citation omitted)). The court further explained by quoting the Third Circuit:

> The facial attack [on subject matter jurisdiction] does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the

> existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Wright*, 2016 WL 4720011, at *2 (quoting *Williamson*, 645 F.2d at 412-13 (quoting *Mortensen*, 549 F.2d at 891)).

"The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Wright*, 2016 WL 4720011, at *2 (quoting *Williamson*, 645 F.2d at 413); *see also Blankenship v. Buenger*, 653 Fed. Appx. 330, 334 (5th Cir. 2016) (in analysis of subject matter jurisdiction for Rule 12(b)(1) motion, the court may properly consider the complaint, undisputed facts in the record, and its own resolution of disputed facts). The court "has broader power to decide its own right to hear the case than when the merits of the case are reached[.]" *Blanchet v. Chevron/Texaco Corp*., 368 F. Supp. 2d 589, 595 (E.D. Tex. 2004) (quoting *Williamson*, 645 F.2d at 413). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Edwards v. Burwell*, No. 15-10807, 2016 WL 4073298, at *1 (5th Cir. July 29, 2016).

## V. MATERIAL FACTS

### A.    Evidentiary objections

MGI and MPSI attached numerous documents to their motions to dismiss, many of which appear in the administrative record of the proceeding from which Plaintiff brings this action for *de novo* review. Docket Entry # 5 at p. 3; *see also* Docket Entry # 23 at p. 3.  According to Defendants, the Court may take judicial notice of these items. Defendants also attached the Declaration of

Elizabeth Weathers-Nguyen, as well as excerpts from Plaintiff's deposition, and certain correspondence between counsel. *Id.*

Plaintiff attached evidence to his responses to Defendants' motions (Docket Entry #s 19, 34), and he also attached the following to his surreply to MPSI's reply: (1) Declaration of Steve Kardell Regarding the Filing of DOL Complaint; (2) Declaration of Steve Kardell Regarding Prefiling Emails and Voluntary Disclosure Meeting with Elizabeth Weathers-Nguyen; (3) Declaration of Steve Kardell Regarding Venue Issue: Location and Origin of Juan Manuel Gonzalez Emails; (4) U.S. District Courts National Judicial Caseload Profile; and (5) C. Bott, MoneyGram Can't Blame $125 Fine on Software: Investors, Law 360 (July 1, 2019).  Docket Entry # 40, Exhibits 1-5.

During the August 8, 2019 hearing, Defendants' counsel objected to the evidence attached to Plaintiff's surreply, asserting the exhibits violate the Court's Local Rules.  Hearing Tr. (Docket entry # 44) at 21:2-10.  Counsel requests the Court strike the exhibits as untimely.  Alternatively, counsel argues almost all of the evidence is inadmissible and requests the Court strike, at a minimum, those portions of Exhibits 1, 2, 3, and 5.  *Id.* at 21:11-23:1.

The Court denies Defendants' counsel's request to strike the exhibits attached to Plaintiffs' surreply as untimely.  However, for purposes of this Report and Recommendation, the Court only considers the evidence attached as Exhibits 3 and 4 to Docket Entry # 40 (related to venue).  The evidence before the Court reveals as follows.

## B.     Facts and factual allegations, including procedural history

Elizabeth Weathers-Nguyen is employed by MPSI as an Associate General Counsel. Declaration of Elizabeth Weathers-Nguyen ("Weathers-Nguyen Decl."), ¶ 2.  MPSI is a subsidiary of MGI, a Delaware corporation who has maintained its principal place of business at 2828 N.

Harwood Street in Dallas, Texas since 2010. *Id*. "MPSI is likewise headquartered at 2828 N. Harwood Street in Dallas, Texas" and maintains its personnel records for all U.S. offices in Dallas. *Id*. ¶ 3. MPSI has no office or employees within the Texarkana Division of the Eastern District of Texas. *Id*.

MPSI gave Plaintiff an offer letter for employment from MPSI, which Plaintiff accepted. *Id*., ¶ 4, and Ex. 1. Plaintiff has never been employed by MGI. Weathers-Nguyen Decl., ¶ 5. MPSI employed Plaintiff from approximately October 2016 until approximately April 2017, when MPSI terminated his employment. *Id.*, ¶ 4. Plaintiff worked for MPSI at its office located at 3000 Internet Boulevard in Frisco, Texas. *Id.* That office space is leased by MPSI, not MGI. *Id.* According to Weathers-Nguyen, MGI does not transact business in MPSI's Frisco, Texas office, or anywhere else in the Eastern District of Texas. *Id.*

Christopher Ponder is MPSI's Head HR Partner in Frisco, Texas, and Juan Manuel Gonzalez is MPSI's Head of Regional Compliance and Strategic Projects in Miami, Florida. *Id.*, ¶ 5. Neither has been employed by MGI. *Id.*

After MPSI terminated Plaintiff's employment, Plaintiff (through counsel) filed a "formal complaint under Section 806 of the Sarbanes-Oxley Act of 2002" with the Occupational Safety & Health Administration ("OSHA"). Docket Entry # 23- 2. MGI was the only identified respondent. *Id.*

OSHA issued a letter on October 12, 2017, stating Plaintiff had not "present[ed] a prima facie showing" of liability. Docket Entry # 23-3. Because OSHA did not have reasonable cause to believe a violation of SOX occurred, the complaint was dismissed. *Id.* The letter advised Plaintiff he had

13

"30 days from the receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge." *Id*. Plaintiff lodged objections on November 13, 2017, requesting a hearing in front of an Administrative Law Judge ("ALJ"). Docket Entry #23-4.

Thereafter, the DOL opened Case Number 2018-SOX-00004, which it styled Juan Lozada-Leoni v. MoneyGram International. The case was assigned to ALJ Tracy A. Daly. Judge Daly issued a Notice of Case Assignment and Prehearing order on January 11, 2018. *See* Docket Entry # 23, Exs. 5 and 6. In that Notice, Judge Daly ordered Plaintiff to file a "detailed Pleading Complaint" by January 25, 2018. Docket Entry # 23-6 at p. 3. The Service Sheet notes the Notice was sent to Weathers-Nguyen for MGI.

In a February 23, 2018 Notice of Hearing Date and Filing Deadlines, Judge Daly also imposed a March 15 deadline for "dispositive and joinder motions." Docket Entry #23-7. Plaintiff filed no such motion.

Plaintiff filed his Original [Administrative] Complaint on March 5, 2018. Docket Entry # 23-8. The Certificate of Service provides a copy of the complaint was sent via email to Weathers-Nguyen, in-house counsel for "Respondent MoneyGram International." *Id.* at p. 26. Plaintiff identified only one respondent — MGI — and did not seek relief against any party other than MGI. *Id.*

Plaintiff filed his First Amended [Administrative] Complaint on March 26, 2018. Docket Entry # 23-9. Again, MGI was the only named respondent. *Id.* Plaintiff did not identify MPSI as a respondent in the original complaint or in the First Amended Complaint. Nor did Plaintiff mention MPSI in the factual narrative of either administrative complaint.

14

Even so, MPSI responded to Plaintiff's First Amended [Administrative] Complaint on April 6, 2018. Docket Entry #23-10. In particular, MPSI filed the Response as "Respondent MoneyGram Payment Systems, Inc., improperly named herein as MoneyGram International." *Id*. at p. 1. In answering Plaintiff's allegation that MGI employed him, "MoneyGram state[d] that Complainant was employed by MoneyGram Payment Systems, Inc. rather than by MoneyGram International[.]" *Id.* at § II, ¶ 1.  Among other things, MPSI admitted Moneygram is a party to a 2012 Deferred Prosecution Agreement or "DPA;" that it paid a fine in 2009 as part of an agreement with the Federal Trade Commission; that it terminated Plaintiff's employment; and that Gonzalez told Plaintiff he was not a good fit.  *Id*., ¶¶ 28, 37, 156.

MPSI, as Respondent, further stated on behalf of MoneyGram that Plaintiff's claims were barred, in whole or in part, by Plaintiff's failure to exhaust his administrative remedies.  *Id*., ¶ 225. According to MPSI, "in his September 28, 2017, initial complaint presented to [OSHA], [Plaintiff] alleged only that his 'protected conduct' included 'efforts to achieve compliance' with 'anti-money laundering laws,' and with the DPA that 'prohibited future violations of the underlying anti-money laundering law.'"  *Id*.  MPSI asserted Plaintiff's allegations in the amended complaint were "far broader than those [Plaintiff] presented to OSHA for investigation, and all such claims are barred." *Id.*  Neither MPSI (nor MGI) raised, as a basis for failure to exhaust, Plaintiff's improper naming of the MoneyGram entity.

Plaintiff gave deposition testimony on May 23, 2018. Docket Entry # 23-11. John Barcus appeared for the respondent, along with Weathers-Nguyen, who is listed on the transcript as associate general counsel for MPSI.  *Id.* During the deposition, Plaintiff testified as follows:

15

Q: Will you please state and spell your full name for the record, please.

A: Juan Lozada-Leoni. . . .

* * *

Q: Okay. And, sir, my name is John Barcus. I'm with the Ogletree Deakins Law Firm and I represent MoneyGram Payment Systems, Incorporated. Do you understand that?

A: I do.

Q: And if I refer in this deposition simply to 'MoneyGram,' do you understand that I mean the entity that was your former employer, MoneyGram Payment Systems, Incorporated?

A: I do.

*Id.* at 4:10–5:1.

Ponder was deposed on October 18, 2018 (Docket Entry # 34-7), and Gonzalez was deposed on December 5, 2018 (Docket Entry # 34-6). John Barcus represented MGI at the depositions.  *See* Docket Entry # 34-6 at 19:3-6 (Mr. Atik: "My understanding is that you do not represent Mr. Gonzalez personally, but you represent MoneyGram International?" Mr. Barcus: "I represent MoneyGram and he's an employee of MoneyGram.  I'm not sure what distinction you're trying to draw there, sir.").

On December 19, 2018, Judge Daly set the ALJ proceeding for a bifurcated final hearing, beginning on January 16, 2019. Docket Entry # 23-12.  However, on December 21, 2018, counsel for Plaintiff "informally notified" Judge Daly's office of his client's intention to "exercise his right under 29 C.F.R. 1980.114 to bring this matter in a U.S. District Court."  Docket Entry # 23-13.  Specifically, Plaintiff's counsel advised that "next week we will be filing the formal removal notice

under Section 1980.114." *Id*. Judge Daly entered an order suspending the existing filing deadlines

until January 4, 2019 and directing Plaintiff to provide a copy of the federal complaint within seven

days after filing in federal court. *Id.*

On January 23, 2019, counsel for Plaintiff delivered a letter by fax to Judge Daly, attaching

what purported to be copies of three filings, and stating as follows:

Enclosed please find your copy of the following:

- Plaintiff Juan Lozada-Leoni's Original Complaint
- Plaintiff's Civil Cover Sheet
- Plaintiff's Certificate of Interested Parties

We are currently experiencing technical difficulties with the Northern District of
Texas ECF filing system.

As soon as we get a docket number assigned to this Original Complaint, we will
provide you with a copy of same.

Docket Entry # 23-14. The version of the complaint attached to the fax named MGI, Gonzalez, and

Ponder as defendants (not MPSI), and it identified the court as the Northern District of Texas, Dallas

Division. *Id.*

Plaintiff filed his original complaint in the Texarkana Division of the Eastern District of

Texas on January 23, 2019, naming MGI, Gonzalez, and Ponder as defendants.  Docket Entry # 1.

At 10:45 p.m. on January 23, 2019, counsel for Plaintiff emailed John Barcus and others, including

Judge Daly, to advise that "rather than run the risk of violating Judge Daly's order that no more

extensions would be granted beyond today, out of an abundance of caution we went ahead and filed

in the Eastern District." Docket Entry # 23-15.  Plaintiff's counsel remarked that his "preliminary

17

research indicates that venue would be proper in both Districts." *Id.*

On January 24, 2019, Judge Daly issued an Order of Dismissal, acknowledging what he believed to be a complaint that had been filed in the Northern District of Texas, Dallas Division, and ordering that "the complaint filed in this matter under the Sarbanes-Oxley Act is DISMISSED with prejudice." Docket Entry # 23-16.  On February 6, 2019, Plaintiff's counsel emailed Moneygram's counsel, noting he was in the process of hiring local counsel in the Texarkana Division.  Docket Entry # 23-17.  As part of his response, Moneygram's counsel asked Plaintiff's counsel why the case had been filed in this division in the first place, and to determine the connection, if any, between this division and the claims in the lawsuit. *Id.*

Counsel for Plaintiff advised "there was some last minute glitch in my filing number in the Northern District, so I decided to file in the Eastern District." *Id.* Counsel further stated that he would "defer answers . . . when we respond to what I'm sure will be a Motion to Transfer. . . . The firms that I have interviewed for local counsel are fairly confident that we can keep the case in the Texarkana Division, so we will see how accurate that prediction is." *Id.* Later on February 6, Moneygram's counsel emailed back, stating Moneygram intended to move to transfer venue.  *Id*. The following day, counsel for Plaintiff indicated, "I will let my local counsel do the talking for me." *Id.*

On March 20, 2019, Plaintiff filed his First Amended Complaint. Docket Entry # 4.  Plaintiff again did not name MPSI as a defendant. On April 11, 2019, MGI filed its motion to dismiss, along with two motions to dismiss filed by Gonzalez and Ponder. Plaintiff initially sought and obtained an extension of time to respond to the motions to dismiss through May 9, 2019. Counsel for Plaintiff

then advised that (1) in light of the (non-venue-related) grounds for dismissal raised by Gonzalez and Ponder, Plaintiff intended to amend to dismiss those defendants with prejudice, and (2) he intended to amend again to add claims against MPSI, all prior to or contemporaneously with his response to the venue motions, and he sought a further extension of time to accomplish all of this, which Defendants did not oppose.  Docket Entry # 16.

On May 16, 2019, Plaintiff filed his Response in Opposition to All Defendants' Jurisdictional Motions ("Response") (Docket Entry # 19), and his Second Amended Complaint (Docket Entry # 21).  As indicated, Plaintiff dismissed Gonzalez and Ponder and added a single cause of action against MPSI for unlawful retaliation in violation of SOX.  SAC, ¶¶ 88-90. It is styled as a cause of action against "Defendants," i.e., MGI and MPSI. *Id.*

## VI. WHETHER PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO MPSI

### A.      Parties' assertions

Defendants contend Plaintiff has failed to exhaust administrative remedies as to MPSI because it was not named as a party – or even referenced – in the OSHA administrative complaints. Plaintiff contends administrative remedies were exhausted because the claims against MPSI fall within the reasonably expected sweep of an OSHA investigation that would ensue from the complaints.

### B.      Applicable law

A SOX-retaliation claim requires exhaustion of administrative remedies prior to filing suit. *Buchanan v. Sterling Constr. Co., Inc.*, Civil Action No. H-16-3429, 2017 WL 6888308, at *3 (S.D.

Tex. July 26, 2017) (citing *Wallace I*, 796 F.3d at 475-76 (holding SOX-retaliation suits are limited by the scope of the administrative complaint)).  Before an employee can assert a cause of action in federal court under § 806 of SOX, that employee must first file a written complaint with OSHA and allow OSHA to resolve the employee's claims administratively. *Wingo v. S. Co.*, No. 2:17-CV-01328-LSC, 2018 WL 2416447, at *4 (N.D. Ala. May 29, 2018) (citing 18 U.S.C. § 1514A(b)(1)(A)). "The administrative complaint must be filed '[w]ithin 180 days after an alleged violation of the Act occurs,' 29 C.F.R. § 1980.103(d), but '[n]o particular form of complaint is required.' *Id.* § 1980.103(b)." *Wingo*, 2018 WL 2416447, at *4.

If the employee has met these requirements for a particular violation, and a final administrative decision has not issued within 180 days of the filing, the employee can proceed with an action in federal court based on that violation. *Id.* (citing 18 U.S.C. § 1514A(b)(1)(B)).  If an employee has not exhausted their claims administratively, a court may not hear those claims. The purpose of an administrative charge with OSHA "is to trigger the agency's defined investigation and conciliation procedures." *Wingo*, 2018 WL 2416447, at *4 (quoting *Wallace I*, 796 F.3d at 476 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970))).

In *Wallace I*, when faced with the exhaustion requirements for a whistleblower complaint under SOX, the Fifth Circuit Court of Appeals "determined the bounds of the administrative exhaustion requirement by reference to the similar requirements of Title VII's exhaustion requirements." *Wingo*, 2018 WL 2416447, at *5 (citing *Wallace I*, 796 F.3d at 476-77).  In that case, "Wallace filed a second amended complaint alleging essentially four categories of protected activity: investigating and reporting the booking of taxes as revenues, investigating whether Tesoro had some sort of side agreement in Idaho Falls, Idaho, that would violate antitrust laws, identifying retaliation

20

against Wallace for raising concerns about violations of the Tesoro Code of Conduct on certificates of compliance in 2008 and 2009, and investigating and reporting suspected wire fraud from inconsistent discounts and price signaling." *Wallace v. Tesoro Corp.*, No. CV SA-11-CA-00099-FB, 2017 WL 6403117, at *1 (W.D. Tex. Feb. 23, 2017), *report and recommendation adopted*, No. SA-11-CA-099-FB, 2017 WL 6403050 (W.D. Tex. Sept. 28, 2017) ("*Wallace II*), *aff'd sub nom. Wallace III*, 916 F.3d 423 (citing *Wallace I*, 796 F.3d at 473).

Tesoro moved to dismiss, and the magistrate judge recommended granting the motion as to the first three categories of protected activity and allowing amendment to cure deficiencies related to the wire fraud-based claim. *Id.* In addition to filing objections, Wallace filed a third amended complaint. *Wallace II*, 2017 WL 6403117, at *1 (citing *Wallace I*, 796 F.3d at 474). Tesoro moved to dismiss it, raising the argument that the wire fraud-based claims had not been presented in the OSHA complaint and were, therefore, unexhausted. *Id.* The magistrate judge recommended dismissing that complaint based on the failure to exhaust, to which Wallace objected. *Id.* The district judge accepted the recommendations, dismissing the first three categories of protected activity from the second amended complaint.  *Id.*

On appeal, Wallace argued that "SOX contains no exhaustion requirement and that, to the contrary, merely filing a charge with OSHA that triggers an investigation is enough to permit a future district-court filing that is not limited by the scope of that charge." *Wallace I*, 796 F.3d at 475.  The Fifth Circuit found that SOX has an exhaustion requirement, and such "exhaustion requirement is consistent with SOX's administrative-enforcement mechanisms." *Id.* at 476.  The Fifth Circuit further found the district court correctly concluded that Wallace's wire fraud-based protected activity was outside the scope of the OSHA complaint or any investigation it would reasonably prompt.

*Wallace II*, 2017 WL 6403117, at *2 (citing *Wallace I*, 796 F.3d at 474).

In so finding, the Fifth Circuit noted the reason for the exhaustion requirement in Title VII applies with equal force to SOX, and the "purpose is to trigger the agency's defined investigation and conciliation procedures." *Wallace I*, 796 F.3d at 476.  The Fifth Circuit further explained the "exhaustion requirement should go only as far as is necessary to give the agency its initial crack at the case rather than focusing only on the four corners of the facts included in the original agency complaint." *Id.*

In adopting the SOX retaliation exhaustion standard in *Wallace I*, the Fifth Circuit noted it was joining the Fourth Circuit Court of Appeals, which had held that "[l]itigation may encompass claims 'reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.'" *Buchanan*, 2017 WL 6888308, at *3 (citing *Wallace*, 796 F.3d at 476, 476 n.7) (quoting *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 699 (4th Cir. 2015))). The Fourth Circuit in *Jones* held that failure to clearly identify two defendants in the underlying OSHA complaint was not fatal to the SOX-retaliation claim because the defendants were named as the persons alleged to have violated the act in the OSHA complaint and were aware of the plaintiff's allegations.  *Buchanan*, 2017 WL 6888308, at *3 (citing *Jones*, 777 F.3d at 669-70).

## C.    Discussion

In his response, Plaintiff asserts he was not required to name MPSI in his administrative complaint. Docket Entry # 34 at p. 5. According to Plaintiff, even though his administrative complaint did not name MPSI, it gave MPSI fair notice of the charges against it and afforded OSHA the opportunity to resolve those charges administratively.  Plaintiff asserts there can be no doubt that

both MPSI and OSHA were put on fair notice of Plaintiff's claims under SOX. *Id*.

Plaintiff also refers to an integrated employer (or single employer) test, asserting all factors point to MGI and MPSI as an integrated entity for purposes of SOX compliance; thus, there is no need for notice of exhaustion as far as MPSI is concerned. *Id*. at p. 7. Plaintiff argues the "distinctions between employees of parents vis-à-vis employees of subsidiaries were blurred as a result of the July 21, 2010 Amendment to SOX, which provided SOX coverage for 'any subsidiary of affiliate [of a public company] whose financial information is included in the consolidated financial statements of such company.'" *Id.* (citing Dodd-Frank Wall Street Reform and consumer Protective Act§ 929A).  According to Plaintiff, prior to the enactment of Dodd-Frank §929A, some ALJs held that non-public subsidiaries could be covered by SOX if the ALJ found that "the parent company and its wholly-owned subsidiary were so intertwined as to represent one entity." Docket Entry # 34 at p. 7 (citing *Hughart v. Raymond James & Assocs., Inc.*, No. 2004 SOX 9, 2004 WL 5308719 at *43 (DOL ALJ, Dec. 17, 2004)).

Plaintiff provided the Court evidence indicating MGI publically emphasizes its "integrated relationship with MPSI."[2]   In MGI's 2016 Form 10-K, MGI stated as follows: "We conduct our business primarily through our wholly owned subsidiary, MoneyGram Payment Systems, Inc. ('MPSI'), under the MoneyGram brand."  Docket Entry # 34-3 at p. 5. According to Plaintiff, in both

---

[2] Plaintiff attached to his responses a Form 10-K for MGI for the period ending 12/31/16. Docket Entry # 34-3. Additionally, Plaintiff attached the 2012 Deferred Prosecution Agreement ("DPA"), wherein the United States of America deferred prosecution of MGI for five years on a two-count Criminal Information charging aiding and abetting wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2, and willfully failing to implement and maintain an effective anti-money laundering program in violation of the Bank Secrecy Act, Title 31, United States Code, Sections 5318(h) and 5322.  Docket Entry # 34-4.  Plaintiff also attached a 2018 Joint Motion to Amend and Extend the Deferred Prosecution Agreement, with the attached Amendment to and Extension of Deferred Prosecution Agreement ("Amended DPA"), entered into between MGI and the DOL.  Docket Entry # 34-5.

the DPA and the Amended DPA, MGI acquiesced and consented to recognizing all of its employees as subject to those agreements. Plaintiff asserts both the DPA and the Amended DPA combined all of MGI's employees together in terms of oversight, with no distinction as to which entity (parent or subsidiary) was actually the "employer." Plaintiff contends Gonzalez, Plaintiff's immediate supervisor, and Ponder, the head of human resources, testified without distinction that they were employed by MoneyGram. Docket Entry # 34-6 at 19:7; Docket Entry # 34-7 at 23:24-25.  Plaintiff asserts these facts are determinative as to the issue of whether MPSI and MGI are substantially identical entities for purposes of notice of the underlying DOL charges.[3]

At the August 8, 2019 hearing, Defendants' counsel argued "integrated entity is no longer relevant because SOX provides direct subsidiary liability." Hearing Tr. (Docket Entry #44) at 25:3-4.  The Court has been unable to locate any cases on point within the Fifth Circuit applying the integrated employer test in a SOX case.  However, the Court does not need to rely on any such test in order to find in Plaintiff's favor.

Defendants correctly note a SOX-retaliation claim requires exhaustion of administrative remedies, but they go too far in arguing a party must be specifically named as a respondent in the administrative action.  Hearing Tr. (Docket Entry # 44) at 24:11-12. Defendants cite *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282, 1356 (N.D. Ga. 2006) and *Hanna v. WCI Communities, Inc.*, Civil Action No. 04-80595-CV-HURLEY/LYNCH (S.D. Fla. Nov. 15, 2004), among other cases, for that proposition.  At the hearing, Defendants' counsel acknowledged some "outlier cases"

---

[3] Should the Court be inclined to recommend Defendants' motions to dismiss be granted based on failure to exhaust as to MPSI, Plaintiff submits he should be entitled to a limited amount of discovery on the issue of whether MGI and MPSI constituted "a single, integrated enterprise and, therefore, naming MPSI as an individual defendant in the administrative complaint would have been superfluous."  Docket Entry # 34 at p. 6, n. 1.

like *Walder v. Bio-Rad Labs, Inc.*, 141 F. Supp. 3d 1005 (N.D. Cal. 2015), relied upon by Plaintiff, have found sufficient the naming of an individual defendant in the body of an administrative complaint.  However, Defendants assert Plaintiff did not even do that.  Hearing Tr. (Docket Entry # 44) at 24:16-21.

As an initial matter, the Court is not convinced *Walder* is an "outlier" case.  In *Wingo v. S. Co.*, No. 2:17-CV-01328-LSC, 2018 WL 2416447 (N.D. Ala. May 29, 2018), the defendants cited *Bozeman* and *Hanna* for the proposition that the plaintiff's failure to name the individual defendant Fanning in the caption of his administrative complaint constituted a per se failure to exhaust. *Wingo*, 2018 WL 2416447, at *5. The court in *Wingo* departed from "*Bozeman* and *Hanna's* overly formulaic exhaustion requirements." *Id.*  The court found the defendants' "reading of *Bozeman* and *Hanna* is discordant with the purpose of the exhaustion requirement, which is to put OSHA on notice of possible SOX violations." *Id.* The court noted it had been unable to find any law or regulation requiring the complainant to include a caption of which defendants are to be sued, and pulling such a requirement out of thin air directly contradicts the current version of § 1980.103(b), which states that "no particular form of a complaint is required." *Id.* The court in *Wingo* then determined whether the counts asserted under SOX in the plaintiff's complaint could "reasonably be expected to grow out of the charge" contained in the two filings that constituted the plaintiff's administrative complaint.[4] *Id.* at *6.

---

[4] The court concluded as follows:

While Plaintiff certainly mentioned Defendant Fanning's acts or omissions in the First Complaint, they were spread among many other actors and were not conspicuously indicated in comparison to other individuals. Plaintiff's Supplemental Complaint likewise instructed OSHA to focus on later events that apparently did not involve Defendant Fanning. Reading the two documents together, the Court cannot believe that OSHA would properly seek to investigate Defendant Fanning more than the other sixty individuals named—and it is certainly indisputable that Plaintiff has not exhausted administrative

Importantly, the Court has located a case from within the Fifth Circuit which has also rejected an overly formulaic exhaustion requirement. In *Buchanan v. Sterling Constr. Co., Inc.*, Civil Action No. H-16-3429, 2017 WL 6888308 (S.D. Tex. July 26, 2017), the court stated the Fifth Circuit's holding in *Wallace I* "only requires that claims have a reasonable relation 'to the original complaint, and those developed by reasonable investigation of the original complaint,' 796 F.3d at 476, which is not so formalistic as to require a party be actually named as the respondent in the administrative action when he is named as the responsible person in the complaint and admittedly aware he was the subject of the OSHA investigation." *Buchanan*, 2017 WL 6888308, at *3. In *Buchanan*, Scott was named in the OSHA complaint as the management person responsible for the reported retaliation. *Buchanan*, 2017 WL 6888308, at *3. Scott conceded he was on notice that he was the subject of the plaintiffs' OSHA complaint. *Id.* The court held any claims against Scott would fall within the sweep of an OSHA investigation that would reasonably be expected to ensue from the administrative complaint.[5] *Id.*

---

remedies against all individuals named in the first complaint. Rather, the Court finds that the specific acts or omissions in the Supplemental Complaint, read in reference to the First Complaint, should properly define the scope of administrative exhaustion. Thus, Defendants' Motion to Dismiss should be granted to the extent that it argues that Plaintiff has failed to complete the prerequisite administrative exhaustion against Defendant Fanning.

*Wingo*, 2018 WL 2416447, at *6.

[5] The court noted its prior holding in *Thanedor v. Time Warner, Inc.*, Civil Action No. H-06-2139, 2008 WL 8886544 (S.D. Tex. Oct. 7, 2008) (Hittner, J.), did not compel the court to reach a different conclusion. *Buchanan*, 2017 WL 6888308, at *3. In *Thanedor*, the court issued an alternative conclusion of law that a pro se litigant failed to present any evidence at trial that he filed an administrative complaint against four of the defendants. *Id.* (citing *Thanedor*, 2008 WL 8886544 at *14). However, the court found the defendants conceded at trial the administrative complaint was properly filed with OSHA as to two additional defendants. *Id.* According to the court in Buchanan, *Thanedor's* holding does not stand for the proposition that a party must be named as a defendant in the administrative proceeding; merely, that under the facts of that case, there was no evidence some of the parties to the suit were parties to the underlying administrative complaint.

As urged by Plaintiff and noted above, in the Fifth Circuit "[t]he scope of a judicial complaint is limited to the sweep of the OSHA investigation that can reasonably be expected to ensue from the administrative complaint." *Buchanan*, 2017 WL 6888308, at *3 (citing *Wallace I*, 796 F.3d at 476). Defendants argue MPSI did not have notice that Plaintiff was asserting a claim against it until the SAC was filed in this lawsuit.  Hearing Tr. (Docket Entry # 44) at 23:22-24.  However, the evidence shows MPSI, and OSHA, were aware and that MPSI was included in the underlying administrative action.

MPSI's Associate General Counsel Weathers-Nguyen received notification of the filings and actively participated in the administrative action.  MPSI employees, Gonzalez and Ponder, were referenced throughout both administrative complaints and were both deposed.  However, at their depositions, they indicated they were employed by MGI.  Importantly, MPSI filed the answer to Plaintiff's amended administrative complaint, and it did not raise the improper entity issue in its failure to exhaust arguments.  Considering the unique facts of this case, the Court finds Plaintiff's claims against MPSI can reasonably be expected to grow out of the administrative complaints against MGI.  Accordingly, the Court finds Plaintiff exhausted his administrative remedies as to the SOX-retaliation claim against MPSI and recommends MPSI's motion to dismiss for lack of jurisdiction be denied.[6]  The Court now considers Defendants' § 1404(a) motion to transfer venue.

---

[6] Because the Court recommends MPSI's motion to dismiss be denied, the Court need not consider MGI's motions to dismiss under Rule 12(b)(3) and alternative § 1406(a) motion to transfer to the Northern District of Texas. *See* Defendants' MGI and MPSI Motion to Dismiss, or in the Alternative, Transfer slides from August 8, 2019 hearing at p. 17.

## VII. DEFENDANTS' MOTION TO TRANSFER
## VENUE PURSUANT TO 28 U.S.C. § 1404(a)

### A.    Parties' assertions

In the briefing on the alternative motions to transfer venue pursuant to 28 U.S.C. § 1404(a), Defendants contend transfer to the Northern District of Texas, Dallas Division, or alternatively, the Sherman Division of the Eastern District of Texas would be more convenient. Docket Entry #5 at pp. 18-23; *see also* Docket Entry # 23 at pp. 20-21. However, at the August 8, 2019 hearing, Defendants focus on their alternative request for intra-district transfer to the Sherman Division of the Eastern district of Texas.  According to Defendants' counsel, in the event the Court does not dismiss either MGI or MPSI, this case should be transferred under § 1404(a) to the "clearly more convenient venue, which is actually intra-district transfer to the Sherman" division of the Eastern District of Texas.  Hearing Tr. (Docket Entry # 44) at 40:24-41:3; *see also id.* at 69:8-12 (stating in the event the Court denies MPSI's motion to dismiss as an improper defendant, the "only comparison we're doing with 1404 is between Texarkana and Sherman").

Defendants submit the relevant private and public interest factors favor intra-district transfer to the Sherman Division. According to Defendants, Plaintiff has not "pointed to any fact document, witness, or event that occurred in the Texarkana division of the Eastern District of Texas." *Id*. at 71:9-12.  In its reply, MPSI contends there is a local interest in the Sherman Division because Plaintiff worked for MPSI in its Frisco, Texas office, and Plaintiff was informed of his termination there. Docket Entry # 37 at pp. 8-9.

In response, Plaintiff acknowledges a substantial event (his termination) occurred in Frisco,

but he argues one convenience factor (the interest of justice) significantly weighs in favor of keeping venue in the Texarkana Division.   Hearing Tr. (Docket Entry # 44) at 61:12-16.  Plaintiff contends the other convenience factors are either neutral or weigh slightly against intra-district transfer, because "39 out of 44 [witnesses] are closer to Texarkana."  *Id*. at 61:16-20.

**B.**    **Applicable law**

Title 28, United States Code, Section 1404(a) provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)

The defendant must first demonstrate that the plaintiff could have brought the action in the transferee court initially.  *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The defendant moving to transfer venue must show "good cause" for transfer.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").  "When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirement and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"  *Id.*

In determining whether to grant a motion to transfer under § 1404(a), a district court must balance the private convenience interests of the litigants and the public interests in the fair and efficient administration of justice. *See Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 297 (5th Cir.

29

1963) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947));[7] *see also Volkswagen II*, 545 F.3d at

315.  The private interest factors include "(1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance

for willing witnesses; and (4) all other practical problems that make a trial of a case easy,

expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citing *Volkswagen I*, 371  F.3d at

203).

The public interest factors are: "(1) the administrative difficulties flowing from court

congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of

the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of

conflict of laws [or in] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citing

*Volkswagen I*, 371  F.3d at 203). While the factors are appropriate for most cases, they are not

necessarily exhaustive or exclusive.  *Id*.  No single factor is of dispositive weight.  *Id.*  The court

should engage in a case-by-case consideration of convenience and fairness.  *See Stewart Org., Inc.*

*v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The Court addresses Defendants' motions with these guidelines in mind, first looking to the

threshold inquiry, then moving to the private interest factors, and concluding with the public interest

factors. *Virginia Innovation Scis., Inc. v. Amazon.com, Inc*., No. 4:18-CV-474, 2019 WL 3082314,

at *9 (E.D. Tex. July 15, 2019).  As no one contests Plaintiff's case against both MGI and MPSI

could have been brought in the Sherman Division of the Eastern District of Texas, the threshold

---

[7] The Court points out that *Gilbert* involved a common law *forum non conveniens* issue which is to be distinguished from a transfer under § 1404. District courts are given greater discretion to transfer in § 1404 cases than they are to dismiss in *forum non conveniens* cases.  *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). *Gilbert* merely articulated the public and private interest factors to be considered.

inquiry is satisfied. *Id*. Therefore, the Court will turn to whether the Sherman Division is the more convenient forum, starting with the private interest factors.

## C.   Discussion

### 1.   Private interest factors

#### a.   Relative ease of access to sources of proof

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Defendants must show that transfer to the Sherman Division will result in more convenient access to sources of proof. *Durrett v. Walmart, Inc.*, No. 2:18-CV-00332-JRG, 2018 WL 5630521, at *2 (E.D. Tex. Oct. 31, 2018) (citing *Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6279907, at *2 (E.D. Tex. Dec. 28, 2017)).

MGI is headquartered in Dallas and preserves its records there. Docket Entry # 24 at p. 6. MPSI is also headquartered in Dallas and maintains its personnel records for all U.S. offices in Dallas. Docket Entry #5 at p. 8. Plaintiff worked for MPSI in Frisco, Texas, within the Sherman Division.  According to Defendants' presentation materials at the August 8, 2019 hearing, the following sources of proof are located in either Frisco (within the Sherman Division) or Dallas (near the Sherman Division): (1) MGI documents; (2) MPSI's personnel records; (3) one of MPSI's document servers; (4) other MPSI relevant documents; (5) agent review worksheets; (6) AML/fraud compliance review reports; (7) acknowledgment form; (8) suspicious activity reports; (9) documents related to meeting with Walmart; and (10) documents related to alleged presentations.  *See* Defendants' MGI and MPSI Motion to Dismiss, or in the Alternative, Transfer slides from August

31

8, 2019 hearing at p. 20.

Plaintiff asserts Ponder, MGI's director of human resources, testified no physical documentation was created regarding communications between Ponder and Gonzalez about the reasons for Plaintiff's termination; thus, local documents will have little relevance here. Docket Entry # 19 at p. 8. Plaintiff asserts he will seek documents from MGI's agents, such as SupreValu, CVS, and Schnucks, which are located in the "Atlanta-Georgia area, and in the Midwest." *Id.* Regarding documentary evidence stored electronically, Plaintiff claims both MGI's and MPSI's email servers are located in Minnesota. Docket Entry # 32 at p. 8. Plaintiff further contends Gonzalez's documents are located in Miami.  Arguing the relevant sources of proof are located out-of-state, Plaintiff states the access to local sources of proof is neutral.

The Fifth Circuit has made clear that the sources of proof requirement is a meaningful factor in the analysis. *See Volkswagen II*,  545 F.3d at 316 (citing *Volkswagen I*, 371 F.3d at 203). In *Radmax*, the Fifth Circuit explained that the inconvenience of transporting documents sixty-two miles further to the Marshall Division as compared to the Tyler Division "may well be slight, but . . . the question is of *relative* ease of access, not *absolute* ease of access." *Smith v. Michels Corp.*, No. 2:13-CV-00185-JRG, 2013 WL 4811227, at *3 (E.D. Tex. Sept. 9, 2013) (quoting *Radmax*, 720 F.3d at 288 (emphasis in original)). The Fifth Circuit found the relative ease of access to sources of proof weighed in favor of transfer "because all of the documents and physical evidence [were] located in the Tyler Division." *Id.* (quotations and alterations omitted).

Here, relevant sources of proof are located in the Sherman Division of the Eastern District of Texas or in Dallas, which is much closer to the Sherman Division (specifically, the Plano

courthouse) than to the Texarkana Division.  Considering this, and further considering there are no documents or physical evidence located within the Texarkana Division, the Court finds this factor weighs in favor of transfer.

### b.      Availability of compulsory process

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Virginia Innovation*, 2019 WL 3082314, at *15 (citing *Volkswagen I*, 371 F.3d at 203). Under Federal Rule of Civil Procedure 45, a court may enforce a subpoena issued to any non-party witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. *Virginia Innovation*, 2019 WL 3082314, at *15 (citing FED. R. CIV. P. 45(c)(1)(B)). Similarly, a court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *Virginia Innovation*, 2019 WL 3082314, at *15 (citing FED. R. CIV. P. 45 (a)(2); also citing FED. R. CIV. P. (c)(1)(A)). Party witnesses do not require compulsory process for trial and are not given much weight in this factor. *Virginia Innovation*, 2019 WL 3082314, at *15. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary. *Id.* (citing *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-cv-805, 2014 WL 105106, at *2 (E.D. Tex. Jan. 10, 2014)).

With regard to out-of-state witnesses, Defendants and Plaintiff agree this factor is neutral. Regarding in-state witnesses, Plaintiff represents he does not plan to call any non-party witnesses residing within the State of Texas; thus, he argues this factor is neutral.  Docket Entry # 32 at pp. 8-9. Defendants argue this factor favors transfer for likely witnesses in Frisco.  According to Defendants,

there is no guarantee the many local witnesses Plaintiff identified in the administrative proceeding will remain employed with Defendants by the time of trial,[8] "and in any event, the question is whether compulsory process is available if it is necessary – and Plaintiff concedes . . . 'the Sherman Division would have subpoena power whereas Texarkana would not.'" Docket Entry # 24 at p. 7 (emphasis in original) (quoting Docket Entry # 19 at p. 9).

Importantly, neither party has identified any non-party witnesses in the Texarkana Division of the Eastern District.  The Sherman Division's absolute subpoena power over any Dallas area non-party witnesses is a consideration in the venue analysis.  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  This factor therefore weighs in favor of transfer.

**c.     Cost of attendance for willing witnesses**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Potter v. Cardinal Health 200, L.L.C.*, No. 2:19-CV-00007-JRG, 2019 WL 2150923, at *4 (E.D. Tex. May 16, 2019) (quoting *In re Genentech*, 556 F.3d 1338, 1343 (Fed. Cir. 2009) (applying Fifth Circuit law)). As the Fifth Circuit has emphasized, this factor does not lose all relevance when the movant seeks to transfer to a venue within 100 miles of the court from which transfer is sought. *Potter*, 2019 WL 2150923, at *4 (citing *Radmax*, 720 F.3d at 288–89). Indeed, the Fifth Circuit recognized that even transfers within 100 miles can impose costs on the witnesses, and that these costs should be factored into the analysis. *Potter*, 2019 WL 2150923, at *4 (citing *Radmax*, 720 F.3d at 289).

---

[8] Specifically, MGI points out John Tyson, who resides in Dallas, was an MPSI employee when he gave deposition testimony during the administrative proceeding.  Docket Entry # 24 at p. 7, n. 1.  According to MGI, Tyson is no longer employed by MPSI, and if for some reason he were to "become reluctant to attend trial willing, this court would not be able to compel his presence."  *Id*.

The parties have not identified any potential witnesses as being located or employed in the Texarkana Division of the Eastern District.  According to Defendants, Plaintiff deposed or identified several MPSI employees in the administrative proceeding who reside in the DFW area: (1) Ponder; (2) Lea Pfiefer; (3) Andy Villareal; and (4) Kyle DeBlock.  *See* Defendants' MGI and MPSI Motion to Dismiss, or in the Alternative, Transfer slides from August 8, 2019 hearing at p. 22. Defendants assert there are several likely out-of-state witnesses, including the following: (1) Gonzalez (Miami); (2) Domh Leandro (Miami); (3) Manuel Goico (Atlanta); (4) Dana Johnson (Minneapolis); (5) Derya White (Atlanta); and (6) Peter Green (UK).  *Id.*

Defendants contend the cost of attendance would be substantially greater for any of these witnesses if trial were held in the Texarkana Division rather than in the Sherman Division.  Docket Entry # 5 at pp. 21-22.  In response, Plaintiff argues the "shortest distance to the Texarkana courthouse from the Midwest, the East Coast or the Florida-Georgia area would be through the Shreveport airport. . . ." Docket Entry # 19 at pp. 14-15.  Plaintiff further asserts the cost of lodging in Texarkana would be less expensive than in the Dallas area.  Hearing Tr. (Docket Entry # 44) at 57:23-58:3.  Therefore, Plaintiff argues this factor is neutral.  The Court disagrees.

The Court notes some of the events in this case allegedly occurred at MPSI's Frisco, Texas office, which is located within the Sherman Division. Most, if not all, of the MPSI witnesses likely work or reside in the DFW area, which weighs in favor of transfer.  *See Potter*, 2019 WL 2150923, at *4.  On balance, the Court finds this factor weighs in favor of transfer.

**d.    All other practical problems**

Practical problems include those that are rationally based on judicial economy.  *Id.* at * 5.

Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of or against transfer. *Id.* (citing *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762 at \*6 (E.D. Tex. Sept. 28, 2010), *aff'd sub. Nom. In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011)). The Fifth Circuit has clarified that "the garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *Potter*, 2019 WL 2150923, at \*5 (quoting *Radmax*, 720 F.3d at 289).

Neither party has identified any practical problems that would cause this case to be substantially delayed if it is transferred to the Sherman Division.  Thus, this factor is neutral.

**2.     Public Interest Factors**

**a.     Administrative difficulties flowing from court congestion**

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Potter*, 2019 WL 2150923, at \*5 (quoting *Genentech*, 566 F.3d at 1347). In deciding whether to transfer, a court may consider how quickly a case will come to trial and be resolved, but time to trial should not outweigh other factors and should be viewed with caution because this consideration is the "most speculative."  *See Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-CV-313, 2009 WL 3161370 at \*4 (E.D. Tex., Sept. 30, 2009).  [T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket. *Genentech*, 566 F.3d at 1347 (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir.1984)).

Plaintiff relies on the larger number of cases filed in the Sherman Division versus the

Texarkana Division for the 2019 year. Docket Entry # 34 at p. 19. According to Plaintiff, the Sherman Division's docket is more congested than that of the Texarkana Division, which "weighs significantly in favor of maintaining venue here." *Id.*

Plaintiff's concerns regarding court congestion are mitigated because transfer to the Sherman Division in this instance will not require reassignment to a different district judge. Because the Court is unaware of any "difficulties that would arise from transferring or retaining th[e] case," the Court finds this factor is neutral. *Potter*, 2019 WL 2150923, at *5 (citing *Radmax*, 720 F.3d at 289).

**b.      Local interest in having localized interests decided at home**

The Court must consider local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Potter*, 2019 WL 2150923, at *5 (quoting *Volkswagen I*, 371 F.3d at 206). As noted above, the present forum does not have any meaningful ties to the controversy. The alleged acts or omissions did not occur in Texarkana, Plaintiff does not reside in Texarkana, none of Plaintiff's witness's reside in Texarkana, Defendants do not reside in Texarkana, and the decisions challenged in this case did not uniquely or disproportionately impact residents of the Texarkana Division. If the case was heard in the Texarkana Division, citizens in communities with little connection to the case would be forced to serve on the jury.

By contrast, there is a local interest in adjudicating this dispute in the Sherman Division. MPSI has an office in Friso, and many of the alleged events involving MPSI employees took place in Frisco. The citizens of the Sherman Division of the Eastern District of Texas have a strong local interest in resolving this controversy. Accordingly, the Court finds this factor weighs in favor of

intra-district transfer.

**c.      Familiarity of the forum with the governing law**

Neither party argues that either the Texarkana Division or the Sherman Division lacks familiarity with the law that will govern in this case. The Court finds that both divisions are equally capable of applying the relevant law and finds this factor is neutral. *Potter*, 2019 WL 2150923, at *6 (citing *Radmax*, 720 F.3d at 289).

**d.      Avoidance of unnecessary conflicts of law**

Neither party has shown any concerns about potential conflict of law in this matter.  The Court finds this factor neutral.

**D.      Summary**

Upon considering each of the applicable public and private factors related to transfer pursuant to 28 U.S.C. § 1404(a), the Court finds that, on balance, such factors weigh in favor of transfer.  For these reasons, the Court recommends Defendants' alternative motion to transfer pursuant to 28 U.S.C. § 1404(a), on an intra-district basis, be granted. Accordingly, it is hereby

**RECOMMENDED** that Defendant MoneyGram International, Inc.'s Motion to Dismiss for Improper Venue, or Alternatively, Motion to Transfer Venue Under 28 U.S.C. § 1406 (Docket Entry # 5-1) and Defendant MoneyGram Payment Systems, Inc.'s Motion to Dismiss (Docket Entry # 23-1) be **DENIED.**  It is further

**RECOMMENDED** that Defendants' Alternative Motions to Transfer Under 28 U.S.C. § 1404(a) (Docket Entry #s 5-2, 23-2) be **GRANTED**.  It is further

**RECOMMENDED** that the above-entitled and numbered cause of action be transferred to the Eastern District of Texas, Sherman Division.

Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of November, 2019.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE