**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **JUAN LOZADA-LEONI,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No.  4:20-cv-00068-RWS-CMC** |
| **MONEYGRAM INTERNATIONAL, INC., and** | § | |
| **MONEYGRAM PAYMENT SYSTEMS, INC.** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR A PROTECTIVE ORDER**

Defendants MoneyGram International, Inc. ("MGI") and MoneyGram Payment Systems, Inc. ("MPSI") (collectively, Defendants") file this Response to Plaintiff Motion for a Protective Order ("Motion") [Dkt. No. 76] and state:

## I.      INTRODUCTION

In this lawsuit, Plaintiff Juan Lozada-Leoni ("Plaintiff") has pleaded a single cause of action against Defendants for retaliation in violation of the Sarbanes-Oxley Act of 2002 ("SOX"), arising from the alleged wrongful termination of Plaintiff's employment in April 2017. [Dkt. No. 21 (Second Amended Complaint) ¶¶ 88-90.] After MPSI terminated his employment,[1] Plaintiff opened his own law practice in "maybe June, the first week of June," of 2017, under the name of "Law Office of Juan Lozada Leoni," in lieu of seeking employment with another employer. *See* Exhibit 1 (Lozada Trans. at 10:24 – 11:18).[2]

---

[1] Although Plaintiff sued both Defendants, he has conceded that he was employed only by MPSI, and not MGI, its parent company. *See* Defendant MGI's Motion for Summary Judgment. [Dkt. No. 79].

[2] Excerpts from the May 23, 2018, deposition of Plaintiff are attached hereto as Exhibit 1.

## II.        RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.        Damages Discovery at the Administrative Stage.

As the Court is aware, prior to its removal to this Court, this suit was pending before an Administrative Law Judge at the Department of Labor. On May 22, 2018, the day before his deposition, Plaintiff served his First Amended Disclosures in the administrative proceeding, in which he revealed that he was seeking back pay and lost future earnings based on having had to "cut his salary by 2/3 in order to survive in the only job he was able to get, his own solo practice." *See* Exhibit 2.[3] Although Plaintiff had previously produced a substantial number of documents relating to the merits of his claims with his required disclosures, he had not produced documents relating to his law practice or his alleged damages. Counsel for the Parties discussed this issue during the May 23 deposition, and counsel for Plaintiff agreed to produce tax returns and related documents for both Plaintiff *and* his law practice prior to the scheduled resumption of Plaintiff's deposition in June 2018.

On June 4, 2018, counsel for Plaintiff emailed copies of Plaintiff's personal income tax return for 2017, as well as a profit and loss statement, balance sheet, and corporate tax return for the Law Office of Juan Lozada, also for the year 2017. *See* Exhibit 3.[4] As discussed below, Plaintiff testified about these documents during his June 19, 2018, deposition. At no time did Plaintiff or his attorney claim that these documents were irrelevant or confidential, that their production was burdensome, or that the law firm documents were not within Plaintiff's control.

---

[3] Plaintiff's First Amended Disclosures are attached hereto as Exhibit 2.

[4] The June 4, 2018, email from Steve Kardell to John Barcus is attached hereto as Exhibit 3.

B.     **Damages Discovery in this Lawsuit.**

In his Second Amended Complaint, Plaintiff also seeks damages including (i) "back pay (lost wages and benefits)" and (ii) "attorney's fees and costs." [Dkt. 21 at p. 23.] Plaintiffs in employment cases have a long-recognized duty to mitigate their damages, and in their answers, Defendants have each pleaded that Plaintiff failed to mitigate any alleged damages. [Dkt. 77 ¶ 98 (MGI) and 78 ¶ 97 (MPSI).] On February 28, 2020, Defendants timely served two sets of narrowly-tailored written discovery requests directed specifically at the issue of Plaintiff's mitigation of his alleged damages (the "Mitigation Discovery"), including Requests for Production of Documents (14 requests) ("Requests") and Interrogatories (16 questions). The Requests and Interrogatories are attached hereto as Exhibits 4 and 5, respectively. One of the purposes of the Mitigation Discovery was to "bring current" the tax and financial records of Plaintiff's law practice through 2018, 2019, and 2020.[5]

C.     **The Extension of the Answer Date.**

Plaintiff's deadline to respond to the Requests and answer the Interrogatories, or to serve any objections to the Mitigation Discovery, was March 28, 2020. On March 20, 2020, Plaintiff asked Defendants to extend the deadline for Plaintiff to answer the Mitigation Discovery until April 27, 2020, ostensibly because "the coronavirus has hurt Plaintiff's ability to calculate Mr. Lozada's total gross wages in each year of employment." [Dkt. No. 63.] Defendants agreed, and the Court granted the motion to extend Plaintiff's deadline to answer the discovery. [Dkt. No. 64.]

---

[5] The Mitigation Discovery became necessary after Plaintiff failed to comply with Rule 26(e)'s duty to supplement.

D.     <u>**The Pending Motion and the Four Requests in Dispute.**</u>

On April 14, 2020, evidently while still working on calculating his "gross wages," Plaintiff filed the Motion, seeking to avoid producing (1) certain financial information relating to his law practice, and (2) any fee agreements he has or had with his counsel under which he seeks to recover attorney's fees. The specific Requests at issue are:

> <u>**Request No. 2.**</u>  The federal income tax returns for the Law Office of Juan Lozada for 2018 and 2019, including all schedules and attachments. If the 2019 tax return is incomplete or unavailable as of the date of your responses, you are reminded of your duty to supplement your production as soon as the documents become available.
>
> <u>**Request No. 3.**</u>  Monthly, quarterly, and annual profit and loss statements for the Law Office of Juan Lozada from 2018, to the present.
>
> <u>**Request No. 4.**</u>  The current or most recent balance sheet for the Law Office of Juan Lozada- Leoni.
>
> <u>**Request No. 12.**</u>  Your fee agreements with every law firm or attorney that currently or in the past has represented you in this lawsuit, including but not limited The Kardell law Group, the Smith Weber Law Firm, and the Law Offices of Juan Lozada.

[Motion (Dkt. No. 76) at pp. 1-2.][6] For the reasons set forth below, the Court should deny the Motion and order Plaintiff to fully respond and produce all responsive documents to the above-quoted Requests.

---

[6] Plaintiff "re-numbered" these as requests 1 through 4 in the Motion.

# III.   ARGUMENT AND AUTHORITY

## A.   The Scope of Discovery Under Rules 26 and 34.

Under Rule 34(a), a party "may serve on any other party a request within the scope of Rule 26(b) . . .  to produce and permit the requesting party or its representative to inspect, copy, test, or sample" any designated documents or electronically stored information[7] "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). Rule 26(b), in turn, provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Because all of the information sought in the challenged requests is relevant to the Parties' claims and defenses, as set forth below, the Court should deny the Motion and order Plaintiff to produce responsive documents.[8]

## B.   The Financial Requests.

### 1.   Plaintiff's Grounds for Objection.   Three of the four requests seek financial information regarding Plaintiff's law firm:  tax returns, profit and loss statements, balance statements, and tax returns for 2018, 2019 and 2020 (collectively, the "Financial Requests"). In other words, the same type of documents Plaintiff voluntarily produced for 2017. Plaintiff seeks

---

[7] Including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. *Id.*

[8] The Court should also deny the Motion because Plaintiff's objections are untimely and have been waived. Plaintiff sought and obtained an extension of his deadline to answer and respond to the Mitigation Discovery, not an extension of his deadline to serve objections. Likewise, the Court's order, which matches the proposed order Plaintiff submitted, only addressed an extension of the date to answer – not object ("ORDERED that the deadline for the Plaintiff to *answer* Defendants' Requests for Production and Interrogatories is extended to April 27, 2020" (emphasis added). Plaintiff's deadline to object was March 28, 2020. He has never served objections, and to the extent the Motion *constitutes* an objection, it is untimely. Thus, the Court can and should deny the Motion on this ground alone, before even reaching its merits.

---

protection from the Financial Requests for several vaguely-explained reasons, but his primary argument seems to be that "defendants served plaintiff a request for production where defendants requested corporate tax returns and a great deal of confidential information from the private entity ***that plaintiff controls***." [Motion (Dkt. No. 76) at p. 3 (emphasis supplied).] He characterizes the Financial Requests as a "fishing expedition" and as "overbroad and duplicative," and as imposing an "undue burden or expense" on him. *Id.* Finally, he accuses Defendants of attempting to use the Financial Requests to "circumvent" Federal Rule of Civil Procedure 45, "which controls and limits the discovery that can be requested from a non-party." *Id.* He has promised to answer the Interrogatories "stating the amount of wages and non-wage income received by him," as though that excuses him from producing corroborating documents. None of these arguments have merit.

     **2.**    **The Financial Records are Within Plaintiff's Control.**   Plaintiff's initial argument – that the documents sought in the Financial Requests belong to an alleged third party – fails on several independent grounds. First, even if Plaintiff's law firm is technically a separate legal entity, which Plaintiff alleges but never proves, Rule 34 renders that distinction and argument legally irrelevant. As quoted above, Rule 34 requires a party to produce documents that are within its "possession, custody, or control." Control means both actual possession and the legal right, authority, or ability to obtain documents on demand. *See, e.g.*, *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-1230 (Fed. Cir. 1996); *Hernandez v. Results Staffing, Inc.*, No. 4:14-cv-182-A, 2017 WL 3842858, at *14 (N.D. Tex. Sept. 1, 2017) ("the word 'control,' when used in a discovery sense, includes the legal right, authority, or ability of a party responding to discovery to obtain documents on demand"); *Cadle Co. v. Terrell*, No. 4:01-cv-0399-E, 2002 WL 22075, at *5 (N.D. Tex. Jan. 7, 2002) (responding party had the right to obtain records from his

credit card company and his bank, and objection that documents were not within his "actual possession, custody, or control" lacked merit).

As Plaintiff concedes *in the Motion itself*, Plaintiff "controls" the allegedly separate entity. As the exclusive owner of his law practice (Plaintiff does not suggest there is another partner or owner of his law practice), Plaintiff has full and unfettered access to the requested records, and his suggestion that they need not be produced because Defendants did not subpoena them from his law firm, which presumably would have meant serving a subpoena *on Plaintiff* as the owner of the law firm, is the height of gamesmanship. As noted above, Plaintiff *had previously produced* the law firm's profit and loss statement, balance sheet, and tax return for 2017 – something Plaintiff very conspicuously failed to tell the Court about in the Motion. Attached as Exhibit 6 is a redacted copy of Exhibit 25 to Plaintiff's June 19, 2018, deposition testimony. These are the documents regarding his law firm that Plaintiff voluntarily produced with the June 4, 2018, email. The first two pages are a profit and loss statement. The third page is a balance sheet. The remaining pages constitute the 2017 tax return of the Law Office of Juan Lozada, which indicates that the entity was allegedly incorporated on April 17, 2017 (nearly contemporaneous with his termination by MPSI), had gross receipts of $139,095 for the remainder of 2017, and paid Plaintiff, the entity's only officer, just $23,184 of those receipts as compensation.

In the Financial Requests, Defendants seek production of the 2018 through 2020 versions of these documents, not only to determine Plaintiff's reported compensation, but also to investigate whether Plaintiff's reported compensation is a true measure of whether he has suffered economic damages. For example, many of the business expenses claimed by the entity in 2017 appear to be personal in nature (including a total of tens of thousands of dollars in automobile and travel expenses). Plaintiff made no objection to producing this document at the administrative stage, and

answered questions about it during his deposition, claiming that he paid "a very small income for myself because I wasn't sure if I was going to make a profit," and also testifying that he really did incur over $4,000 in automobile maintenance costs ("tires and different things") in the last eight months of 2017 on a new vehicle he claims to have leased solely for business purposes. *See* Exhibit 7 (Lozada Trans. II 104:23 – 109:14).[9] Thus, his own prior conduct undercuts his current argument that requested documents belong to his law firm and not him.

Moreover, to the extent *any* doubt remains on this topic, Plaintiff's offer in the Motion to "provide the Judge with a copy of the 2018 and 2019 federal income tax returns, the 2018 through 2020 monthly, quarterly, and annual profit and loss statements, and the most recent balance sheet for the Law Office of Juan Antonio Lozada, PLLC for in-camera review" [Motion (Dkt. No. 76) at pp. 4-5] makes clear that Plaintiff "controls" his law firm's books and records, including its profit and loss statements, balance sheets, and tax returns, to be able even make this offer.

    **3.**      **The Financial Requests are Narrowly Tailored.**  Plaintiff further complains that the Financial Requests are overly broad, unduly burdensome, duplicative, and oppressive. The Financial Requests are narrowly tailored and simply seek for 2018 and 2019 what Plaintiff has already produced for 2017. Nothing more. Plaintiff alleges but offers no proof that producing the updates to these documents is, in any way, burdensome or costly, and again, his offer to produce them to the Court for inspection belies the argument. His blanket assertion of burdensomeness, with no proof or indication of how this is so, is entitled to no weight.

    **4.**      **Confidentiality is Irrelevant.**  Plaintiff's confidentiality concerns regarding these documents are easily resolved. Plaintiff produced the 2017 financial documents (as well as his personal income tax return) during the administrative stage of the proceeding without requesting

---

[9] Excerpts from the June 19, 2018, Deposition of Juan Lozada-Leoni, *i.e.*, volume II of his deposition, are attached as Exhibit 7.

any sort of protective order or designation of confidentiality.[10] To the extent Plaintiff has any concerns, Defendants agree to the entry of the standard Non-Patent Protective Order published on the Court's website, and have extended that offer in writing to counsel for Plaintiff. Counsel for Plaintiff has yet to respond. However, assuming Plaintiff is amenable, the Parties will file a joint motion. Alternatively, the Court can readily enter an order that addresses this issue and still allows for the production of this information. In any event, "confidentiality" is not a valid objection or a proper basis upon which to refuse to produce the requested documents.

5.    **Interrogatory Answers Do Not Preclude Production.**  Finally, Plaintiff's claim that he will be providing sworn interrogatory answers (using data from law firm documents he controls) does not alleviate him from producing documents responsive to the Financial Requests. The Federal Rules of Civil Procedure permit both interrogatories and document requests for a reason:  one party need not take the "word" (even if sworn) of the other party regarding what has occurred. The documents covered by the Financial Requests may well tell a much different story of Plaintiff's true earnings than how he (a self-proclaimed skilled trial lawyer) chooses to characterize those earnings. Plaintiff has every incentive to minimize the amount of income he has earned from his law practice in the way he answers the Interrogatories. The best evidence of how much income Plaintiff's law practice has generated, and therefore what amount of lost wages Plaintiff truly has suffered, are his law firm's financial records. The Court should deny the Motion and reject Plaintiff's specious arguments about needing to be protected from disclosing more of the very basic financial documents he has already produced without prior complaint.

---

[10] Nevertheless, as a courtesy to Plaintiff, most of the financial information has been redacted from Exhibit 6.

C.    <u>**The Fee Agreements.**</u>

Plaintiff also asks the Court to excuse him from producing his fee agreements with the three law firms that have represented him in this lawsuit, because "Plaintiff's lawyers prepared the fee agreements in anticipation of litigation." [Motion (Dkt. No. 76) at p. 7.] Plaintiff seeks to recover attorneys' fees. [Dkt. No. 21 at p. 23.] It is blackletter law that when a party seeks to recover attorneys' fees, his fee agreement with his attorneys is discoverable. *See, e.g.*, *Bustamante v. State Farm Lloyds*, No. 5:15-cv-184, 2016 WL 10655600, at *1 (S.D. Tex. June 20, 2016) ("because Plaintiff is seeking to recover her attorneys' fees from Defendant, her fee agreement with her attorney is relevant, discoverable, and admissible"); *Hernandez v. Scott*, No. SA-10-CV-1051, 2011 WL 2619342, at *1 (W.D. Tex. July 1, 2011) (rejecting plaintiff's argument that fee agreement and billing statements need not be produced until *after* trial, because "the information sought through these production requests will enable defendant to assess its total liability if plaintiff prevails on her claim"); *Dunn v. Schlumberger Tech. Corp.*, No. 08-CV-3238, 2010 WL 11646536, at *2 (S.D. Tex. July 10, 2010) ("in an employment discrimination case such as this, a prevailing party may be entitled to attorney's fees; Plaintiff's fee structure is therefore discoverable") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

The documents are not privileged. "Financial transactions between the attorney and client, including the compensation paid by or on behalf of the client are not generally within the privilege except in special circumstances[.]" *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981). *See, e.g.*, *Jeanbaptiste v. Wells Fargo Bank, N.A.*, No. 3:14-cv-264-K, 2014 WL 6790737, at *3 (N.D. Tex. Dec. 1, 2014) ("The Fifth Circuit has long recognized the general rule that matters involving the payment of [attorney's] fees . . . are not generally privileged"); *Dunn*, 2010 WL 11646536, at *2 ("attorney's fees generally do not fall within attorney-client privilege") (citing

cases). As the *Dunn* court observed, "to the extent the contract between Plaintiff and his attorney contains anything that is subject to the attorney-client privilege, that information can be redacted." *Id.*

Plaintiff does not address this line of cases, and offers no substantive explanation of how any fee agreements with counsel contain "work product," citing only to *Hickman v. Taylor*, 329 U.S. 495 (1947). *Hickman*, which arose from a boating accident that resulted in several deaths, has no bearing on the discoverability of fee agreements. The defendant in *Hickman*, assumed (correctly so) that it might be sued following this accident. To aid in the defense of that anticipated litigation, it retained counsel who investigated the incident, interviewed various witnesses, and drew conclusions about the events. The Court addressed whether such statements made or obtained by counsel were discoverable, or whether they were protected as work product because they reflected counsel's metal thought processes. *Hickman* did not involve a party's fee agreement with counsel where that party sought to recover its fees, and nowhere does the Court even discuss that issue in its opinion. Unless and until Plaintiff is willing to stipulate that he does not and will not seek to recover attorneys' fees, the Fee Agreements must be produced.

## IV.  RELIEF REQUESTED

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion in its entirety, award Defendants their fees and expenses, and grant all other relief, general or special, at law or in equity, to which Defendants may be justly entitled.

Respectfully submitted,


By:  /s/ John M. Barcus
    Gary D. Eisenstat
    Texas State Bar No.  06503200
    gary.eisenstat@ogletree.com
    John M. Barcus
    Texas State Bar No.  24036185
    john.barcus@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas  75225
Telephone:  (214) 987-3800
Facsimile:  (214) 987-3927


    -and-

Darby Vincent Doan
ddoan@haltomdoan.com
Randy Roeser
rroeser@haltomdoan.com
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, Texas 75503
Telephone:  (903) 255-1000
Facsimile:  (903) 255-0800

**ATTORNEYS FOR DEFENDANTS**



## CERTIFICATE OF SERVICE

The foregoing instrument was filed using the Court's CM/ECF system on April 23, 2020, which will transmit a copy to all counsel of record.

                      /s/ John M. Barcus
                     John M. Barcus



42586546.1