IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| **JUAN LOZADA-LEONI,** | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 4:20-cv-00068-RWS-CMC |
| **MONEYGRAM INTERNATIONAL, INC., and** | § | |
| **MONEYGRAM PAYMENT SYSTEMS, INC.** | § | |
| **Defendants.** | § | |

**JUAN LOZADA – LEONI'S RESPONSE TO MONEYGRAM INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGEMENT AND BRIEF IN SUPPORT**

Plaintiff Juan Lozada – Leoni ("Mr. Lozada") files this Response to MoneyGram International Inc.'s Motion for Summary Judgment and Brief in Support and states:

**A RESPONSE TO MGI'S STATEMENT OF THE ISSUE TO BE DECIDED**

1.  Plaintiff Juan Lozada – Leoni brought a SOX whistleblower lawsuit against his former employers MoneyGram Payment Systems, Inc. ("MPSI") and MoneyGram International ("MGI"). MoneyGram International moved for summary judgement arguing that MoneyGram

International is not Mr. Lozada's employer. MGI says the sole question presented in its motion for summary judgment is may Plaintiff seek relief against MGI under the Sarbanes Oxley Act despite the fact that he was not employed by MGI? Mr. Lozada has three answers to MGI's question. First MGI's burden is to prove that there is no dispute as to any material facts and MGI is entitled to judgment as a matter of law regarding MGI's status as Mr. Lozada's employer and MGI has not met this burden. Fed. R. Civ. P. 56(a). In *United States vs. Jon-T Chemicals, Inc.* the Court of Appeals for the 5th Circuit held that if a parent company exercises total domination and control over a subsidiary then consequently the subsidiary is the alter ego of the parent company and it is not clearly erroneous for the district court to pierce the corporate veil and hold the parent company liable for acts done by the subsidiary. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 689 (5th Cir. 1985). [Exhibit 1.] MGI has failed to prove that MPSI is not MGI's alter ego. MGI has failed to prove that the court should not pierce the corporate veil and hold MGI liable for acts done by MPSI. Thus, MGI has failed to prove that MGI is entitled to judgment as a matter of law regarding MGI's status as Mr. Lozada's employer.

2.      Second, MGI cannot obtain summary judgment before Mr. Lozada deposes five key witnesses. Rule 56(d) of the Federal Rules of Civil Procedure says, "if a nonmovant shows by affidavit or declaration that for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56. [Exhibit 2]. Mr. Lozada has attached a declaration from Theodore Garber, Mr. Lozada's attorney, stating that Mr. Lozada cannot present facts essential to justify his opposition to MGI's motion for summary judgment because Mr. Lozada has not deposed Craig Bernier, Sylvia Gil, Derya White, and Fredy Morales and these depositions will prove that MPSI was

MGI's alter ego. [Exhibit 3]. On April 16, 2020 the Court signed the Second Amended Docket Control Order, which states that Mr. Lozada has until June 29, 2020 to depose Craig Bernier, Sylvia Gil, Derya White, and Fredy Morales. [Exhibit 4, page 3 of Document 87 and pages 3,4, 6, and 7 of Document 86]. These four witnesses will establish that MPSI is MGI's alter ego. In *United States vs. Jon-T Chemicals, Inc.* the Court of Appeals for the 5$_{th}$ Circuit held that if a parent company exercises total domination and control over a subsidiary then consequently the subsidiary is the alter ego of the parent company and it is not clearly erroneous for the district court to pierce the corporate veil and hold the parent company liable for acts done by the subsidiary. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 689 (5th Cir. 1985). [Exhibit 1]. If the court finds that MGI has met its burden, then the Court should defer considering MGI's motion for summary judgment because Mr. Lozada needs to depose Craig Bernier, Sylvia Gil, Derya White, and Fredy Morales in order to confirm that MPSI is MGI's alter ego. Then after these witnesses confirm that MPSI is MGI's alter ego, the Court should deny MGI's motion for summary judgment because MGI exercises total domination and control over MPSI and consequently MPSI is the alter ego of MGI. Thus, after these witnesses confirm that MPSI is MGI's alter ego, the court should pierce the corporate veil and hold MGI liable for acts done by MPSI.

3.  Third, MPSI is MGI's alter ego so the court should pierce the corporate veil and hold MGI liable for MPSI's actions. The Defendants argue in their brief that Mr. Lozada was working for MoneyGram Payment Systems, Inc. [Exh. 7 (Dkt. No. 83, paragraph 2).] MoneyGram International Inc. stated in its 2017 10-K that: "[w]e conduct our business primarily through our wholly owned subsidiary, MoneyGram Payment Systems, Inc. ("MPSI"), under the MoneyGram brand." [Page 3 of exhibit 5]. Thus, MoneyGram International owns 100% of MoneyGram

Payment Systems, Inc. MoneyGram International controls MoneyGram Payment Systems, Inc. Even if the Court believes that Mr. Lozada was working for MoneyGram Payment Systems, Inc., Mr. Lozada has to be working for MoneyGram International, Inc as well. The idea that Mr. Lozada could be working for MPSI and not MGI is not possible because MGI controls every decision that MPSI makes. Therefore, MGI is Mr. Lozada's employer. MGI exercises total domination and control over MPSI and consequently MPSI is the alter ego of MGI so the court should pierce the corporate veil and hold MGI liable for MPSI's actions.

## A RESPONSE TO MGI'S STATEMENT OF UNDISPUTED MATERIAL FACTS

4.      MGI's statement of undisputed material facts says that MPSI is Mr. Lozada's employer. [Exh. 7 (Dkt. No. 83, paragraph 2).] Mr. Lozada argues that MGI is also Mr. Lozada's employer because MGI's alter ego is MPSI. Mr. Lozada and the defendants dispute whether MGI is Mr. Lozada's employer.

## ARGUMENT AND AUTHORITY

5.      Mr. Lozada has alleged a cause of action against MoneyGram International and MoneyGram Payment Systems, Inc. for retaliation in violation of the Sarbanes – Oxley Act, 18 USC § 1514A. The questions presented in this response are simple: First, has MGI met its burden regarding MGI's status as Mr. Lozada's employer? Second, if the court reaches question two, can MGI obtain summary judgment before Mr. Lozada deposes five key witnesses? Third if the court reaches question three, when should the court pierce the corporate veil and hold MGI liable for acts done by MPSI? The answers are that MGI has not met its burden regarding MGI's status as Mr. Lozada's employer. In addition, if the court reaches question two, then the court

should allow Mr. Lozada to depose five key witnesses before ruling on MGI's motion for summary judgment. Last, if the Court reaches question three, then the court should hold that MPSI is MGI's alter ego. The court should pierce the corporate veil, hold MGI liable for MPSI's actions, and deny MGI's Motion for Summary Judgment.

A.     **Summary Judgment Standard**

6.     Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. LibertyLobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

7.     The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. MoneyGram International Inc. has not met its burden of demonstrating that MGI is entitled to judgment as a matter of law.**

8.  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To make out a claim under Section 1514A, Mr. Lozada must prove each of the following elements: (1) he engaged in protected whistleblowing activity; (2) his employer knew that he engaged in the protected activity; (3) he suffered an adverse action; and (4) the protected activity was a contributing factor in the adverse action. *Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254, 259 (5th Cir. 2014). See, e.g., *Wallace v. Andeavor Corp.,* 916 F.3d 432, 426-427 (5th Cir. 2019); *Paul v. Cisco Sys., Inc*., No. 4:17-cv-00599, 2018 WL 1386863, at *2 (E.D. Tex. Feb. 26, 2018). In MoneyGram International Inc.'s brief, MoneyGram International, Inc. argues that MoneyGram International, Inc. was not Mr. Lozada's employer. [Exh. 6 (Dkt. No. 83, paragraph 12).] However, the 5th Circuit has held that if a parent company exercises total domination and control over a subsidiary then consequently the subsidiary is the alter ego of the parent company and it is not clearly erroneous for the court to pierce the corporate veil and hold the parent company liable for acts done by the subsidiary. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 689 (5th Cir. 1985). [Exhibit 1, page 1]. Defendants argue that Mr. Lozada worked for MPSI. [Exh. 7 (Dkt. No. 83, paragraph 2).] MGI stated in its 2017 10-K that: "We conduct our business primarily through our wholly owned subsidiary, MoneyGram Payment Systems, Inc. ("MPSI"), under the MoneyGram brand." [Exhibit 5]. Thus, MGI owns 100% of MPSI. In *United States vs. Jon-T Chemicals, Inc.* the Court of Appeals for the 5th Circuit held that there is

"…a laundry list of factors to be used in determining whether a subsidiary is the alter ego of its parent. These include whether:

(1) the parent and the subsidiary have common stock ownership;

(2) the parent and the subsidiary have common directors or officers;

(3) the parent and the subsidiary have common business departments;

(4) the parent and the subsidiary file consolidated financial statements and tax returns;

(5) the parent finances the subsidiary;

(6) the parent caused the incorporation of the subsidiary;

(7) the subsidiary operates with grossly inadequate capital;

(8) the parent pays the salaries and other expenses of the subsidiary;

(9) the subsidiary receives no business except that given to it by the parent;

(10) the parent uses the subsidiary's property as its own;

(11) the daily operations of the two corporations are not kept separate; and

(12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. The court said, "additional factors that are sometimes mentioned are (1) "[w]hether the directors and officers of [the subsidiary] act independently in the interest of that company, or whether they take their orders from the [parent] and act in the [parent's] interest," *Baker*, 656 F.2d at 180; and (2) the

"connection of [the] parent's employee, officer or director to [the] subsidiary's tort or contract giving rise to [the] suit," *Miles*, 703 F.2d at 196. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 692 (5th Cir. 1985). [Exhibit 1]. MGI failed to use these factors to analyze MGI's status as Mr. Lozada's employer. Therefore, MGI did not carry its burden to prove that MGI is entitled to summary judgment as a matter of law.

C. **MGI's motion for summary judgment is premature and thus the court should defer considering the motion.**

9.      Rule 56(d) of the Federal Rules of Civil Procedure says, "if a nonmovant shows by affidavit or declaration that for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. [Exhibit 2]. Mr. Lozada has attached a declaration from Theodore Garber, Mr. Lozada's attorney, stating that Mr. Lozada cannot present facts essential to justify his opposition to MGI's motion for summary judgment because Mr. Lozada has not deposed Craig Bernier, Sylvia Gil, Derya White, and Fredy Morales and these depositions will prove that MPSI is MGI's alter ego. [Exhibit 3]. On April 16, 2020 the Court ruled that Mr. Lozada has until June 29, 2020 to depose Craig Bernier, Sylvia Gil, Derya White, and Fredy Morales. [Exhibit 4, page 3 of Document 87 and pages 3,4, 6, and 7 of Document 86]. Mr. Garber's declaration says that on behalf of Mr. Lozada, Mr. Garber is going to ask Craig Bernier, Sylvia Gil, Derya White, and Fredy Morales questions regarding the laundry list of factors that the Fifth Circuit stated are crucial in determining whether a subsidiary is the alter ego of its parent. [Page 3 of Exhibit 3]. Mr. Garber's declaration says that the sworn responses of these four witnesses will establish that MPSI is MGI's alter ego. [*Id.*] The court should allow Mr. Lozada to establish all the material facts before the court rules

on MGI's motion for summary judgement. Then after these witnesses establish that MPSI is MGI's alter ego, the Court should deny MGI's motion for summary judgment. After these witnesses establish that MGI exercises total domination and control over MPSI the court should pierce the corporate veil and hold MGI liable for MPSI's actions.

**D. MoneyGram International, Inc. is not entitled to summary judgment as a matter of law.**

10.     Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure only if the movant shows that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). [Exhibit 2]. MGI is not entitled to summary judgment as a matter of law because MoneyGram Payment Systems, Inc. is MoneyGram International's alter ego and thus the court should pierce the corporate veil and hold MGI liable for MPSI's actions. In *United States vs. Jon-T Chemicals, Inc.,* John H. Thomas, Lonnie D. Clark, and Jon-T Farms, Inc. used fraudulent misrepresentations to obtain agricultural subsidies from the government under the Upland Cotton Program. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 688 (5th Cir. 1985). [Exhibit 1, page 1]. The government sought to hold liable the parent company of Jon-T Farms — Jon-T Chemicals — on the ground that Farms was its alter ego or agent. *Id.* at 689. [Exhibit 1, page 1]. The district court ruled that Jon-T Chemicals exercised total domination and control over Jon-T Farms and that consequently Farms was the alter ego of Chemicals. *Id.* On this basis, the district court entered judgment against Chemicals in the amount of $4,787,604.20. *Id.* In *United States vs. Jon-T Chemicals, Inc.* the United States Court of Appeals for the Fifth Circuit affirmed the district court's decision because there is "a laundry list of factors to be used in determining whether a subsidiary is the alter ego of its parent" and "the district court applied the correct legal standard and made findings of fact that are not clearly erroneous." *Id.* Similarly, in Mr. Lozada's

case, applying the Fifth Circuit's laundry list of factors for determining whether a subsidiary is the alter ego of its parent proves that MGI exercises total domination and control over MPSI, MGI's alter ego is MPSI, and that the court should pierce the corporate veil and hold MGI liable for MPSI's actions. The first factor is the parent and the subsidiary have common stock ownership. [Exhibit 1, page 5]. Mr. Lozada does not know the answer, but Mr. Lozada will be able to learn this information after deposing Sylvia Gil, Craig Bernier, Derya White, Fredy Morales, and Dana Johnson. The second factor is the parent and the subsidiary have common directors or officers. *Id.* MPSI and MGI have common directors or officers. Mr. Lozada began working as a Senior Manager for the U.S. Regional Compliance Team for MoneyGram Payment Systems, Inc on October 18, 2016. [Exhibit 7, Dkt. No. 83, paragraph 2.] Mr. Lozada's declaration states, "I never made a distinction between MoneyGram Payment Systems, Inc. and MoneyGram International because we always referred to ourselves as being employees of MoneyGram, we were told that our bosses were Andres Villarreal, the Chief Compliance Officer for MoneyGram and Alex Holmes, the CEO of MoneyGram International, Inc." [Exhibit 6, pages 3 and 4]. According to MoneyGram International, Inc.'s 2017 10-K, Alex Holmes has served as the Chief Executive Officer since January 2016. [Exhibit 5 at page 10]. Also, MoneyGram International, Inc.'s 2017 10-K lists Andres Villareal as a member of its executive leadership team and states that Andres Villareal has been MoneyGram International's Chief Compliance Officer since March 2016. [Exhibit 5 at pages 10 and 11]. Thus, MPSI and MGI have common directors or officers. The third factor is the parent and the subsidiary have common business departments. [Exhibit 1, page 5]. MGI and MPSI have common business departments. MGI's 2017 10-K says, "We conduct our business primarily through our wholly-owned subsidiary, MoneyGram Payment Systems, Inc. ("MPSI"), under the MoneyGram brand."

[Exhibit five at page 3]. Also, MoneyGram had a 2016 Global Partner Compliance Policy. [Exhibit 8, page 1]. This policy does not identify whether this is a MoneyGram International policy or a MoneyGram Payment Systems, Inc policy. In addition, the Deferred Prosecution Agreement between the Department of Justice and MoneyGram International did not distinguish between employees of MoneyGram International, Inc. and employees of MoneyGram Payment Systems, Inc. [Exhibit 13.] Plus, after Mr. Lozada applied for a job with MoneyGram, Alan Brooks, a Senior Recruiter for MoneyGram International, wrote Mr. Lozada an email in which Mr. Brooks said, "Thank you for applying to MoneyGram International." [Exhibit 17, page 1]. Mr. Brooks then interviewed Mr. Lozada for the job. [Exhibit 6, pages 1 and 2]. Mr. Brooks scheduled a second interview for Mr. Lozada and put in that email: "Friday September 9$_{th}$: Onsite interview with MoneyGram International." [Exhibit 19]. Also, after MoneyGram hired Mr. Lozada, Juan Manuel Gonzalez, Mr. Lozada's boss, sent an email to every member of the compliance department at MoneyGram on October 7, 2016 announcing that Mr. Lozada had been hired to lead the U.S. Regional Compliance Team and Mr. Gonzalez never referred to MPSI as the company that he or anyone in the message was working for. [Exhibit 18 and Exhibit 6 at Page 5] That email did contain Mr. Gonzalez's signature block, which said that Mr. Gonzalez worked for MoneyGram International. [Exhibit 18]. The fourth factor is the parent and the subsidiary file consolidated financial statements and tax returns. MGI and MPSI file consolidated financial statements and tax returns. Paragraph seven of Mr. Lozada's second amended complaint alleges that, "MPSI's financial information is included in the consolidated financial statements of MGI.". [Exhibit 10]. Both MGI and MPSI in their answers, admitted this allegation. [Exhibit 11]. The fifth factor is the parent finances the subsidiary. [Exhibit 1, page 5]. Mr. Lozada does not know the answer, but Mr. Lozada will be able to learn this information after

deposing Sylvia Gil, Craig Bernier, Derya White, Fredy Morales, and Dana Johnson. The sixth factor is the parent caused the incorporation of the subsidiary. *Id.* Mr. Lozada does not know the answer, but Mr. Lozada will be able to learn this information after deposing Sylvia Gil, Craig Bernier, Derya White, Fredy Morales, and Dana Johnson. The seventh factor is the subsidiary operates with grossly inadequate capital. *Id.* Mr. Lozada does not know the answer, but Mr. Lozada will be able to learn this information after deposing Sylvia Gil, Craig Bernier, Derya White, Fredy Morales, and Dana Johnson. The eighth factor is the parent pays the salaries and other expenses of the subsidiary. *Id.* Mr. Lozada does not know the answer, but Mr. Lozada will be able to learn this information after deposing Sylvia Gil, Craig Bernier, Derya White, Fredy Morales, and Dana Johnson. The ninth factor is the subsidiary receives no business except that given to it by the parent. MPSI receives no business except that given to it by the parent. In Mr. Lozada's declaration he says, "For operating purposes MoneyGram was a single company, not two companies." [Exhibit 6 at page 4.] Thus, all of MPSI's business comes from people who think they are using MoneyGram International, Inc. to transfer money. The tenth factor is the parent uses the subsidiary's property as its own. [Exhibit 1, page 5]. MGI uses MPSI's property as its own. MGI's 2017 10-K says, "[w]e conduct our business primarily through our wholly-owned subsidiary, MoneyGram Payment Systems, Inc. ("MPSI"), under the MoneyGram brand." [Exhibit five at page three.] The eleventh factor is the daily operations of the two corporations are kept separate. [Exhibit 1, page 5]. The daily operations of the two corporations are not kept separate. MGI's 2017 10-K says, "[w]e conduct our business primarily through our wholly-owned subsidiary, MoneyGram Payment Systems, Inc. ("MPSI")." Exhibit 5 at page 3. The twelfth factor is the subsidiary observes the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. [Exhibit 1, page 5]. Mr. Lozada

does not know the answer, but Mr. Lozada will be able to learn this information after deposing Sylvia Gil, Craig Bernier, Derya White, Fredy Morales, and Dana Johnson. An additional factor that is sometimes mentioned is (1) "[w]hether the directors and officers of [the subsidiary] act independently in the interest of that company, or whether they take their orders from the [parent] and act in the [parent's] interest," *Baker*, 656 F.2d at 180. *Id.* According to Mr. Lozada's declaration, the directors and officers of MPSI take their orders from MGI and act in MGI's interest. Exhibit 6 at page 4. Mr. Lozada's declaration says, "MPSI makes decisions with the sole purpose of benefiting MGI." *Id*. Another factor that is sometimes mentioned is the "connection of [the] parent's employee, officer or director to [the] subsidiary's tort or contract giving rise to [the] suit," *Miles*, 703 F.2d at 196. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 692 (5th Cir. 1985). [Exhibit 1, page 5]. MGI's employees, officers and directors are connected to MPSI's tort giving rise to the lawsuit. MPSI violated 18 USC § 1514A. That statue says, "No company with a class of securities registered under section 12 of the Securities and Exchange Act of 1934, or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)) including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company… may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee … to otherwise assist in a proceeding filed relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A. [Exhibit 12.] To state a claim under Section 1514A, Mr. Lozada must prove each of the following elements: (1) he engaged in protected whistleblowing activity; (2) his employer knew that he engaged in the protected

activity; (3) he suffered an adverse action; and (4) the protected activity was a contributing factor in the adverse action. *Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254, 259 (5th Cir. 2014). See, e.g., *Wallace v. Andeavor Corp.*, 916 F.3d 432, 426-427 (5th Cir. 2019); Paul v. Cisco Sys., Inc., No. 4:17-cv-00599, 2018 WL 1386863, at *2 (E.D. Tex. Feb. 26, 2018).

11. Mr. Lozada engaged in protected whistleblowing activity. The 2012 Deferred Prosecution Agreement between MoneyGram International and the Department of Justice said, "the Company acknowledges and agrees that the Department will file the attached two count criminal Information in the United States District Court for the Middle District of Pennsylvania charging the Company with knowingly and intentionally aiding and abetting wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2, and willfully failing to implement an effective anti-money laundering program, in violation of Title 31, United States Code, Section 5318(h) and regulations issued thereunder." Exhibit 13, Page 1.

12. The 2012 Deferred Prosecution Agreement between MoneyGram International and the Department of Justice also said, "In return for the full and truthful cooperation of the Company, and its compliance with the other terms and conditions of this Agreement, the Department agrees, subject to Paragraphs 16 through 19 below, not to use any information related to the conduct described in the attached Statement of Facts against the Company in any criminal or civil case, except: (a) in a prosecution for perjury or obstruction of justice; or (b) in a prosecution for making a false statement." (Exhibit 13, page 6).

13. In addition, the 2012 Deferred Prosecution Agreement between MoneyGram International and the Department of Justice said "[t]he Company represents that, in addition to the enhancements it has already made to its anti-fraud and anti-money laundering programs as described in the Statement of Facts, the Company has or will also undertake, at a minimum, the

enhanced compliance obligations described in Attachment C, which is incorporated by reference into this agreement, for the duration of this Agreement." (Exhibit 13, page 7).

14.     Attachment C of the 2012 Deferred Prosecution Agreement between MoneyGram International and the Department of Justice said "[t]he Company will require all MoneyGram Agents around the world, regardless of their location, to adhere to either the anti-fraud and anti-money laundering standards as defined by the FATF interpretive guidelines for Money Services Businesses or the U.S. anti-fraud and anti-money laundering standards, whichever is stricter. This new policy will ensure that all MoneyGram Agents throughout the world will, at a minimum, be required to adhere to U.S. anti-fraud and anti-money laundering standards." (Exhibit 13, page 31).

15.     The 2012 Deferred Prosecution Agreement between MoneyGram International and the Department of Justice said, "this Agreement is effective for a period beginning on the date on which the Information is filed and ending five (5) years from that date (the "Term"). (Exhibit 13, page 2). The DPA was filed on November 9th, 2012. *Id.* Thus, the DPA ends on November 9th, 2017. *Id.* Mr. Lozada assisted in a proceeding filed relating to an alleged violation of section 1343 when Mr. Lozada assisted MGI in complying with the DPA. Rule 1.4 of MoneyGram's 2016 Global Partner Compliance Policy says, "Agents shall provide accurate and complete information to MoneyGram when there are any material change(s) in the ownership of the Agent." Exhibit 8, page 4. In order to comply with this policy agents must know the owners of all of their stores. Also, rule 10.1 of MoneyGram's 2016 Global Partner Compliance Policy says, "all Agents who violate this Policy, or any applicable law or regulation, shall be subject to immediate corrective or remedial action including probation, suspension of service, or termination of MoneyGram's services. (exhibit 8, page 15).

16. Mr. Lozada's declaration says that Derya White is a regional compliance officer for MoneyGram and that Dana Johnson is the regulatory and compliance manager for SuperValu. [Exhibit 6, page 4]. Mr. Lozada's declaration says that MoneyGram ensures that its agents are following the MoneyGram Global Partner Compliance Policy through Headquarters Reviews. (*Id.*). On April 6, 2014, Derya White conducted a headquarters review of SuperValu. Dana Johnson represented SuperValu at this meeting. Exhibit 14, page 1 and page 2. On December 19, 2016, Derya White conducted a headquarters review of SuperValu. Dana Johnson represented SuperValu at this meeting. Exhibit 15, page 1 and page 3.

17. Dayna Karel was a Sales Manager for MoneyGram. (exhibit 6, page 5). Juan Manuel Gonzalez was the boss of Juan Antonio Lozada, the Plaintiff. *Id.* On December 5, 2018, Mr. Gonzalez testified in a deposition that around 2017, he instructed Derya White to assist the quarterly business review that Dayna Karel was facilitating at SuperValu. [Exhibit 16 at page 2.] According to Mr. Lozada's declaration, Mr. Lozada also attended the SuperValu meeting because Mr. Lozada wanted to know how SuperValu was complying with MoneyGram's policies. [Exhibit 6, page 5]. According to Mr. Lozada's declaration, at the SuperValu meeting, Mr. Lozada learned that SuperValu did not know the owners of 13 SuperValu stores. *Id.* This was a violation of Rule 1.4 of MoneyGrams's 2016 Global Partner Compliance Policy, which says, "Agents shall provide accurate and complete information to MoneyGram when there are any material change(s) in the ownership of the Agent." [Exhibit 8 page 4 and Exhibit 6, page 5]. In order to comply with this policy SuperValu had to know the owners of all of its stores and SuperValu did not know the owners of 13 of its stores. [Exhibit 6, page 5] Mr. Lozada and Ms. White had to visit SuperValu and start asking questions in order to find out that SuperValu did not know the owners of 13 of its stores. [*Id.*]

18.     According to Mr. Lozada' declaration, Mr. Lozada told his boss, Juan Manuel Gonzalez, that SuperValu does not know the owners of 13 of its stores and Mr. Lozada recommended that MoneyGram suspend the 13 stores in accordance with MoneyGram's 2016 Global Partner Compliance Policy. [*Id.*] Mr. Lozada was helping MoneyGram comply with the DPA, which is protected whistleblower activity. [*Id.*] MPSI and MGI knew that Mr. Lozada engaged in the protected activity. [*Id.*] Mr. Lozada suffered an adverse action. [*Id.*] Mr. Lozada's declaration states that Juan Manuel Gonzalez demoted Mr. Lozada by removing him from the SuperValu account. [*Id.*] Mr. Lozada's declaration also states that MPSI fired him on April 4, 2017. [*Id.*] In Mr. Gonzalez's 2018 deposition, Mr. Lozada's attorney, Davut Atik, asked Mr. Gonzalez, "so losing a customer altogether because a store is suspended did not factor into your decision with regard to these 13 stores." Mr. Gonzalez said, "It played a part, but it wasn't the entire situations of what was happening." [Page 2 of exhibit 9]. Mr. Gonzalez is testifying that losing a customer was a factor in Mr. Gonzalez's reluctance to suspend the 13 SuperValu stores. *Id.* Thus, Mr. Lozada told Mr. Gonzalez to suspend the stores. [Exhibit 6, page 5]. Mr. Gonzalez feared losing customers. [Page 2 of exhibit 9]. Therefore, Mr. Gonzalez removed Mr. Lozada from the SuperValu account and fired him. [Exhibit 6, page 5]. Thus, Mr. Lozada's protected activity was a contributing factor in the adverse action. *Id.* MGI's employees, officers and directors are connected to MPSI's tort giving rise to the lawsuit. *Id.*

19.     In conclusion, MGI's burden is to prove that there is no dispute as to any material facts and MGI is entitled to judgment as a matter of law regarding MGI's status as Mr. Lozada's employer and MGI has not met this burden. Fed. R. Civ. P. 56(a). [Exh. 2].  In *United States vs. Jon-T Chemicals, Inc.* the Court of Appeals for the 5th Circuit held that if a parent company exercises total domination and control over a subsidiary then consequently the subsidiary is the

alter ego of the parent company and it is not clearly erroneous for the district court to pierce the corporate veil and hold the parent company liable for acts done by the subsidiary. *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 689 (5th Cir. 1985). [Exhibit 1]. MGI has failed to prove that MPSI is not MGI's alter ego. MGI has failed to prove that the court should not pierce the corporate veil and hold MGI liable for MPSI's actions. Thus, MGI has failed to prove that MGI is entitled to judgment as a matter of law regarding MGI's status as Mr. Lozada's employer.

20. If the Court believes that MGI had met its burden, then the Court should defer ruling on MGI's motion for summary judgment because Mr. Lozada cannot present facts essential to justify his opposition to MGI's motion for summary judgment since Mr. Lozada has not deposed Craig Bernier, Sylvia Gil, Derya White, and Fredy Morales and these depositions will prove that MPSI was MGI's alter ego. [Exhibit 3]. Rule 56(d) of the Federal Rules of Civil Procedure says, "if a nonmovant shows by affidavit or declaration that for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56. [Exhibit two.] Then after these witnesses confirm that MPSI is MGI's alter ego, the Court should deny MGI's motion for summary judgment because MGI exercises total domination and control over MPSI and consequently MPSI is the alter ego of MGI. Thus, after these witnesses confirm that MPSI is MGI's alter ego, the court should pierce the corporate veil and hold MGI liable for acts done by MPSI.

21. If the Court believes that Mr. Lozada can present facts essential to justify his opposition to MGI's motion for summary judgment, then the Court should rule that MPSI is MGI's alter ego. The Court should pierce the corporate veil and hold MGI liable for MPSI's actions. Therefore,

the Court should deny MGI's motion for summary judgment because MGI is not entitled to judgment as a matter of law.

## RELIEF REQUESTED

For the above reasons, Mr. Lozada, respectfully asks the Court to deny MGI's motion for summary judgment. If the court is not willing to do that, then Mr. Lozada respectfully asks the Court to defer considering MGI's motion for summary judgment because MGI's motion is premature. Also, Mr. Lozada asks the Court to grant all other relief, general or special, at law or in equity, to which Mr. Lozada may be justly entitled.

Respectfully submitted,

By: */s/ Theodore Garber*

Theodore Garber

Texas State Bar Number – 24107171

tgarber@txcivillitigation.com

The Law Office of Juan Antonio Lozada, PLLC

3305 West Slaughter Lane, Second Floor

Austin, Texas 78748

Phone: 469-693-8334

Fax: 866-586-5513

## CERTIFICATE OF SERVICE

This is to certify that on May 5, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system of filing, which will transmit a Notice of Electronic Filing to counsel for Defendants, ECF registrants.

*/s/ Theodore Garber*

Theodore Garber