UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JUAN LOZADA-LEONI § § § Plaintiff, § § v. § § MONEYGRAM INTERNATIONAL, INC. and § MONEYGRAM PAYMENT SYSTEMS, INC. § § Defendants. § § | Case No. 4:20-cv-00068-RWS-CMC |

PLAINTIFF'S MOTION TO AMEND THE DCO FOR LIMITED DISCOVERY

Now Comes Plaintiff, Juan Lozada-Leoni, and respectfully requests specifically limited discovery, in support of which would respectfully show the Court the following:

1. Plaintiff seeks to amend the DCO for the extremely limited purposes of sending a Freedom of Information Act (FOIA) request to the Department of Justice (DOJ) and Federal Trade Commission.

2. The discovery deadline in this case was March 30, 2020. Defendant served its First Request for Production on February 28, 2020—four months ago (as Defendant concedes in a Motion to Compel [ECF 93]). Discovery for the purpose of specific depositions has been extended to July 31, 2020. Counsel for Plaintiff appeared in this case on June 3, 2020, after the close of general discovery.

3. Plaintiff asks to extend the deadline in order to send a FOIA request to the DOJ/FTC regarding the Deferred Prosecution Agreement (DPA) between the DOJ and Moneygram. The Federal Trade Commission (FTC) sued Moneygram in 2009, alleging a laundry list of violations,

including at par. 58 "In direct contradiction to its own fraud prevention policies and its contractual agreement with its agents, Defendant has failed to: (a) conduct adequate due diligence into prospective agents; (b) train and monitor its agents; (c) **investigate, suspend, or termination suspicious agents**; and (d) take other reasonable efforts to prevent fraudulent telemarketers and sellers from using Defendant's money transfer system to perpetrate their frauds. (Exhibit 1, emphasis added). In par. 69, the FTC alleged that Moneygram had "Agents that were the subject of high levels of fraud complaints and paid out large volumes of fraud-induced money transfers; and Agents that violated Defendant's own policies and procedures." (Exhibit 1). Notably, the FTC alleged that **"[Moneygram's] employees who advocated consumer fraud prevention measures, enforcement of contracts with agents, and cooperation with law enforcement on fraud matters or who raised concerns about management's failures in these areas, were discouraged from speaking up or taking action, and in some instances, were disciplined or fired."** (Exhibit 1, par. 73, emphasis added). The FTC alleged numerous violations of federal law being continuously perpetrated by Moneygram. (Exhibit 1, paragraphs 82 through 92). As a result, a permanent Injunction was entered on October 19, 2009 requiring both "appropriate and adequate monitoring of MoneyGram Agent activity relevant to the prevention of Fraud-Induced Money Transfers;" and "prompt disciplinary action against MoneyGram Agents where reasonably necessary to prevent Fraud-Induced Money Transfers, including requiring mandatory fraud training, restricting maximum dollar amounts per receive transaction, **suspension, and/or termination**." (Exhibit 2, paragraphs 4 and 5, emphasis added). MoneyGram was fined $18 million dollars. (Exhibit 2, par. A, p. 15)

4. In 2012, the DOJ and Moneygram entered into a Deferred Prosecution Agreement (DPA) whereby Moneygram admitted, accepted and acknowledged that it was responsible for all of the

fraudulent conduct being charged ("knowingly and intentionally aiding and abetting wire fraud") and described in the Statement of Facts attached. (Exhibit 3, pp. 1—2). Moneygram was fined $100 million dollars. (Exhibit 3). In the DPA, Moneygram agreed to a long list of Compliance obligations, including "enhanced due diligence" and monitoring with respect to "high risk Agents." (Exhibit 3, p. C-2, paragraphs 6 and 7). In the DPA, par. 12 of attachment C-4 (Exhibit 3), Moneygram agreed to provide fraud reports and in par. 14 of attachment C-4 (Exhibit 3), Moneygram agreed to send to the DOJ a report every 90 days of all recommended Agent suspensions that were not implemented and why, as well as whether a Suspicious Activity Report (SAR) was filed. (Exhibit 3, p. C-4, par. 14).

5. This issues of Agent fraud and Agent suspension are central to this case. It is these very issues that were the final catalyst for Plaintiff's termination. Plaintiff discovered some extremely serious violations of the DPA and Moneygram's Compliance program by one of Moneygram's large "strategic" Agents that was designated as "high risk"—Supervalu. Following the specific requirements of the DPA (Exhibit 3) and the federal Injunction against Moneygram (Exhibit 2), Plaintiff recommended immediate suspension of certain Supervalu stores. Mr. Gonzalez superseded Plaintiff's recommendation and immediately "unsuspended" the stores. Plaintiff went to legal with concerns about failing to suspend the stores, believing that there were serious legal implications. Mr. Gonzalez was extremely upset that Plaintiff talked to the Legal Department about the suspension and removed Plaintiff from the account. He fired Plaintiff approximately one week later, alleging he didn't fit "the culture" of Moneygram.

6. The Fifth Circuit Court of Appeals applies a four-factor balancing test to determine whether good cause exists to extend a deadline: (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3)

potential prejudice; and (4) the availability of a continuance to cure such prejudice. *See Reliance Ins. Co. v. La. Land & Exploration Co.,* 110 F.3d 253, 257 (5th Cir.1997) (submit expert reports); *see Geiserman v. MacDonald,* 893 F.2d 787, 790 (5th Cir.1990) (designate expert witnesses); *see S & W Enters., LLC,* 315 F.3d at 536 (amend the pleadings). This test has also been applied in the context of a motion to reopen discovery. *See United States v. McFerrin,* 2007 2007 WL 4353709, *1 (S.D.Tex. Dec. 11, 2007) (citing *Southwestern Bell Tel. Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir.2003)).

7. Notwithstanding this four-factor test, the court still has the "inherent power to control its own docket to ensure that cases proceed before it in a timely and orderly fashion." *U.S. v. Waldman,* 579 F.2d 649, 653 (1st Cir.1978) (citing *United States v. Correia,* 531 F.2d 1095, 1098 (1st Cir.1976)). The purpose of a scheduling order is to allow the district court to control and expedite pretrial discovery matters. *Geiserman,* 893 F.2d at 790. Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner. *Rouse v. Farmers State Bank of Jewell, Iowa,* 866 F.Supp. 1191, 1198 (N.D.Iowa 1994) (citations omitted). To achieve this end, the Court is given broad discretion so that the integrity and purpose of the pretrial order may be preserved. *See Bilbe v. Belsom,* 530 F.3d 314, 317 (5th Cir.2008) (stating that the district court's decision regarding whether to modify a scheduling order is afforded great deference, especially where the facts of the case suggest a lack of diligence on the part of the movant); *S & W Enters., LLC,* 315 F.3d at 535; *Hodges v. United States,* 597 F.2d 1014, 1018 (5th Cir.1979).

8. In *United States v. McFerrin*, No. CIV.A. H-05-3730, 2007 WL 4353709, at *1 (S.D. Tex. Dec. 11, 2007), the court granted a motion to re-open discovery for a specific purpose:

> The Court is satisfied that there is good cause for granting Plaintiff's request. Plaintiff provides excellent reasons for the timing of its request for the extension. The amendment

to permit additional discovery is fully justified by the presentation of new documents and the disclosure of the possible pertinence of many boxes of additional documents. Plaintiff would be unfairly prejudiced by the failure to grant the amendment, while there is no perceptible harm to Defendants in allowing the amendment. The issues in this case are complicated and both Plaintiff and Defendant could benefit from additional time to review documents and consider the deposition testimony of Plaintiff's recently-identified witness.

9. Similarly in *Guzman v. Jones*, 2012 WL 12893478, at *4 (S.D. Tex. May 9, 2012), the court applied the four factor test and found that, even though the plaintiffs had not exercised due diligence, the remaining factors weighed in favor of re-opening discovery for a limited purpose:

> On balance, Plaintiffs have shown that good cause exists under the four-factor balancing test. Though Plaintiffs have failed to meet the diligence standards, the additional discovery relating to the ECM data may have some importance to Plaintiffs case. Moreover, briefly reopening discovery will not result in substantial prejudice to Defendants, and any resulting prejudice can be cured by a continuance. Since reopening discovery for this limited purpose will allow Plaintiffs to determine whether the ECM data exists or if it has been destroyed or altered, the Court will grant a brief extension of the discovery deadline.

10. With respect to the FOIA requests to the DOJ/FTC, Plaintiff concedes a lack of due diligence by his prior counsel. However, as in *Guzman, supra* that is not the controlling factor under these circumstances. The additional discovery is central to the issues in Plaintiff's case with respect to his push to suspend a high risk but profitable, large Agent and his subsequent termination. Whether or not Moneygram reported the initial suspension and revocation of such suspension, as well as whether it filed the required SAR, will provide evidence of Moneygram's compliance or non-compliance with the DPA as well as its retaliatory conduct toward Plaintiff. The reason, if any, provided by Moneygram for reversing the suspension will shed light on the conduct of Gonzalez with respect to the Agent and Plaintiff. Moneygram will not be prejudiced as Plaintiff is not seeking the information from Moneygram and Moneygram will suffer no expense or effort. The permission to obtain such information from the DOJ/FTC will effect no deadline or the trial setting in this case.

11.   Requirement of Second Amended Scheduling Order (b) for proposed DCO Changes:

REMAINING DEADLINES                                            REQUESTED CHANGE

| | | |
|---|---|---|
| 3 DAYS after conclusion of Trial | Parties to file Motion to seal Trial Exhibits | |
| November 16, 2020 | 9 a.m. JURY TRIAL | |
| November 16, 2020 | 9 a.m. JURY SELECTION | |
| November 3, 2020 | 10 a.m. PRETRIAL CONF | |
| October 27, 2020 | Time Requests for voir dire, opening, direct, cross, closing | |
| October 27, 2020 | Responses to Motions in Lim | |
| October 13, 2020 | Motions in Lim and pretrial objections | |
| October 6, 2020 | Exchange Objections to Rebuttal Depo Testimony | |
| September 29, 2020 | Notice of Request for Daily Transcript | |
| September 29, 2020 | Exchange Rebuttal Designations and Obj to Depo | |
| September 15, 2020 | Pretrial Disclosures | |
| July 29, 2020 | Dispositive Motions | |
| March 30, 2020/ July 31, 2020 | Discovery Limited Depositions | |
| August 31, 2020 | | Limited discovery through FOIA request to DOJ/FTC |

FOR THE REASONS STATED, Plaintiff prays for the limited discovery requested and for such further relief as justice may require.

Respectfully submitted,

/s/Susan E. Hutchison
Texas Bar No. 10354100
sehservice@hsjustice.com

        Hutchison & Stoy, PLLC
505 Pecan St., Ste. 101
Fort Worth, Texas 76102
Phone:  817-820-0100
Fax:   817-820-0111

S. Rafe Foreman
Texas Bar No. 10354100
srfservice@hsjustice.com

Hutchison & Stoy, PLLC
1312 Texas Ave., #101
Lubbock, TX  79401
(806) 491-4911

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

This is to certify that on July 22, 2020, a true and correct copy of the above and foregoing document was served on the following attorneys of record by delivery to each of them via facsimile transmission:

John M. Barcus, Gary D. Eisenstat
Ogletree, Deakins
john.barcus@ogletree.com
rroeser@haltomdoan.com

J. Randall Roeser, Darby V. Doan
Haltom & Doan
rroeser@haltomdoan.com
ddoan@haltomdoan.com

        s/Susan E. Hutchison
        Susan E. Hutchison

CERTIFICATE OF CONFERENCE

Plaintiff's counsel conferred with Defendants' counsel and they are not opposed to Plaintiff sending FOIA requests to the federal agencies but are opposed to Plaintiff being able to supplement/use such information.

        s/Susan E. Hutchison
        Susan E. Hutchison