# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| JUAN LOZADA-LEONI | § § § | |
| Plaintiff, | § § | Case No. 4:20-cv-00068-RWS-CMC |
| v. | § § | |
| MONEYGRAM INTERNATIONAL, INC. and MONEYGRAM PAYMENT SYSTEMS, INC. | § § § § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO INTERVENOR'S REQUEST FOR ATTORNEY FEES

Now Comes Plaintiff, Juan Lozada-Leoni, and files his Response to Intervenor's Request for Attorney Fees, in support of which would respectfully show the Court the following:

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

    I.    Statement of Issues ........................................................................................................... 1

    II.    Mr. Kardell's Conduct During Administrative Process and Litigation .............................. 1

        A.    Pre Filing............................................................................................................... 1

        B.    Administrative Filing ........................................................................................... 4

        C.    This Lawsuit.......................................................................................................... 8

        D.    Mr. Kardell's Threats to Reveal Confidential Information ................................ 11

    III.    Argument ........................................................................................................................ 12

CERTIFICATE OF SERVICE.................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Augustson v. Linea Aerea Nacional–Chile S.A. (LAN–Chile),* 76 F.3d 658 (5th Cir.1996). ......... 13

*Burrow v. Arce,* 997 S.W.2d 229 (Tex.1999). ................................................................................ 13

*Campbell Harrison & Dagley L.L.P. v. Lisa Blue/Baron & Blue,* 843 F. Supp. 2d 673 (N.D. Tex. 2011) .......................................................................................................................................... 13

*City of Alexandria v. Brown*, 740 F.3d 339 (5th Cir. 2014) .......................................................... 14

*Rocha v. Ahmad,* 676 S.W.2d 149  (Tex.App.-San Antonio 1984, writ dism'd) ........................... 13

*Sanes v. Clark,* 25 S.W.3d 800  (Tex.App.-Waco 2000, pet. denied) .......................................... 13

*Whiteside v. Hartung,* 1999 WL 548211, at *6 (Tex.App.-Houston [14th Dist.] July 29, 1999, unpub., pet. denied) .................................................................................................................. 13

**I.      Statement of Issues**

Attorney Steve Kardell is asserting a claim for attorney fees in this matter. However, Mr. Kardell's representation of Mr. Lozada included misrepresenting the work he would do, failing to keep Mr. Lozada informed, filing incomplete and/or inappropriate documents, threatening his own client using falsehoods and misrepresentations, forcing the client to take a key deposition (failing to show for it), failing to prepare for the client's deposition, requesting NO written discovery—not a single document—in this document heavy case and missing five separate discovery deadlines to do so, completely missing the expert designation deadline, failing to conduct necessary depositions within the multiple discovery deadlines, refusing to withdraw when instructed to do so, interfering with continued litigation, and threatening to reveal confidential information. Despite the massive hurdles created by Mr. Kardell's conduct, Mr. Lozada's new counsel managed to obtain a settlement with Defendants. Mr. Kardell now seeks to obtain a portion of the attorney fees from that settlement. Relevant authority holds that when an attorney performs in the manner that Mr. Kardell did, they are not entitled to a fee.

**II.     Mr. Kardell's Conduct During Administrative Process and Litigation**

A.      Pre Filing (all statements are supported by Affidavit that is Exhibit 9)

Mr. Lozada asked Mr. Kardell to let MGI know in April 2017, that they needed to preserve evidence in their server pertaining to Lozada's email address as it contained a lot of evidence. Mr. Kardell told Mr. Lozada that he would, but he failed to do it. In August 2017, Mr. Kardell actually asked Mr. Lozada if *Lozada* could draft the document hold letters and actually sent Lozada a sample so that he could prepare the draft himself on August 9, 2017. On September 27, 2017, Mr. Kardell's paralegal sent Mr. Lozada fifteen hold letters for him to

1

review, which means that six months after getting hired, Mr. Kardell had not even sent MGI hold letters to avoid spoliation of evidence contained in Lozada's work computer and email account.

On August 9, 2017, Mr. Lozada sent the following message to Mr. Kardell:

"Steve, I want to make sure that you understand that the intent of my message was not to criticize your work, I was simply requesting more clarity. We don't have a signed engagement letter because a few months ago I brought to your attention that I had some concerns about the contract that you have presented me for signature and you told me that we could discuss any potential changes later. One of the issues we needed to discuss was that in the engagement letter you wrote that you were representing me in the negotiation of a severance packet, well, I did not hire you to negotiate a severance packet, I hired you to help me navigate the waters of a wrongful termination/whistleblower protection action and potentially file a lawsuit on my behalf. At the very least, the scope of representation needed to be corrected before I could even sign it. I think that I have been very diligent with providing most of the things that you have requested from me. I understand that there is a level of complexity to my case but I do need to have a better map of where we are going."

Mr. Kardell answered:

"Let me approach this in a slightly different way: (1) in the 'go by' Sabine pilot complaint we sent you, there is a list of third-party document holds; (2) that is a good example because we were able to come up with 7 third parties that we can potentially bring into this dispute; (3) in your case, so far all we have is Supervalu and Freshfields. We can address all your other concerns and complaints later, but what I would like to know now is do you have any other potential third parties that we could send document holds to? One other one I can think of would

be that check casher in Oak Cliff, but I doubt that would have the impact we are looking for. In my opinion, this increases the value of the case significantly.

     Mr. Kardell did almost nothing on the matter until June 9, 2017. That day, he asked Elizabeth Weathers (from MGI) for dates to meet (for our first settlement discussion). They met in Dallas, on June 28, 2017. Chris Ponder and Elizabeth Weathers from MGI showed up. The meeting lasted for two hours and it was an unmitigated disaster. Despite that Mr. Kardell had spoken to Mr. Lozada several times and Lozada had sent him a significant amount of information as he had been Lozada's lawyer for over three months by then, it was clear that Mr. Kardell knew next to nothing about the case. Mr. Kardell told Ms. Weathers that he was going to file a *Sabine Pilot* and a Sox case but it was so obvious that he knew little about the case that Ms. Weathers and Mr. Ponder simply mocked him. Mr. Lozada was devastated that in the first meeting with MGI, Mr. Kardell had shown up extremely unprepared and he did not understand compliance issues, particularly as related to Mr. Lozada's claims.

     Mr. Lozada then sent the following message to Mr. Kardell,

"I really wish I could get a response to the questions that I asked via text, I need to know what our timeline is, I am concerned that we had a meeting with MoneyGram a few weeks ago where they did not take us very seriously, I am also concerned that time is flying by and five months have gone by and we have little to show for. I need to have more clarity of what lays ahead, I still don't fully understand the game plan and this is troubling me. We met with them so step one is done, what happens now? what is step 2, 3, 4, and 5? I know that things take time but there is no reason for me to feel that I am flying blind. Please respond to the following questions, not by requesting information or by talking to me about something else.

I need to know:

1. If you have sent MoneyGram any type of hold letter since our meeting with them 2. Has MoneyGram communicated with you since that day? if they have not, have you contacted them?

2. When are you planning to have the SOX filing ready?

3. Are we contacting DOJ?

4. Are we filing a lawsuit at some point? if so, when? and what factors do we need to consider to take this option.

I am not trying to be difficult here, I just need to understand what is happening or not happening on my case so I know what to expect in the next few months. And financial is still trying to get regulatory approval for their acquisition of MoneyGram."

On September 8, 2017, Mr. Kardell told Mr. Lozada that he would stop working on his case until Mr. Lozada signed his original retainer agreement.  On September 11, 2017, Mr. Lozada signed a modified version of the engagement letter, and Mr. Kardell told him that he was going to file a *Sabine Pilot* petition.

Mr. Kardell wrote:  "I think we want to do a draft Sabine Pilot petition first.  With that we will attach those document hold letters. Second step will be to draft the SOX complaint.  As soon as we get a few urgent items out of the way, we will start on this."  This is approximately six months after Mr. Kardell was retained.

    B.    Administrative Filing

On Sept. 13, 2017, Mr. Lozada asked Mr. Kardell if they needed to worry about any deadlines with *Sabine Pilot* but Mr. Kardell ignored the question.  Mr. Kardell's secretary sent Mr. Lozada a copy of the SOX complaint on Sep 26, 2017.  Mr. Lozada never heard about the *Sabine Pilot* lawsuit again. On September 28, 2017, Mr. Kardell filed a complaint under Section 806 of SOX with OSHA.  He has never filed a *Sabine Pilot* complaint.

4

OSHA denied the complaint filed by Mr. Kardell, stating it was insufficient. Mr. Lozada got notice of this via FedEx from OSHA and called Mr. Kardell, who told Lozada that he had "never seen anything like this before." Mr. Lozada sent an email which Mr. Kardell answered:

From Mr. Kardell: November 11, 2017  "I called Juan to let him know we would be working on the objections and request for a hearing, and he had several questions related to how this works, but mostly he expressed very strong concerns as to (1) the reasons for preparing and filing the original complaint **so late** and (2) why the original complaint was so "bare bones."

Mr. Lozada responded:  "Steve, nobody is trying to piss you off, all I wanted was reassurance that everything is okay. You are right, I don't know anything about SOX filings, I only became concerned when you told me that you had never seen an answer like the one we got and then never explained what that meant, sorry but a lot of these issues could be ironed out if you communicated a bit better with me and don't keep suggesting that I am too dumb to understand your brilliant strategy. You are very sensitive to criticism but don't realize that by failing to keep me on the loop you leave me with the impression that there is something wrong. These are all simple concepts and reasonable expectations, sure hope that this message does not irritate you."

Mr. Kardell's response was:  "I apologize; I thought I explained what my OSHA investigator/insider told me about this. Repeat: never seen this before, never ever. He said it was because of staffing problems."

Mr. Kardell sent Mr. Lozada dozens and dozens of emails in which he kept asking Mr. Lozada to explain the same things over and over again. Additionally, he frequently asked Mr. Lozada to draft documents.

On November 13, 2017, Mr. Kardell appealed the denial from OSHA to the DOL ALJ and requested a hearing. On March 5, 2018, Lozada was informed that the SOX complaint had been filed. On April 25, 2018, Mr. Lozada was getting worried about time and asked if Mr. Kardell was planning to take the deposition of his former supervisor, Juan Manuel Gonzales. On May 13, 2018, Mr. Lozada got a message from Mr. Kardell suggesting that he was preparing a *Sabine Pilot* complaint. Mr. Lozada had no idea what was going on.

Mr. Lozada's deposition was taken on May 23, 2018. Mr. Kardell canceled several meetings that were scheduled to prepare for the deposition and there was no preparation at all. Mr. Kardell was completely checked out and answering his emails for most of the deposition. It was very unsettling to Mr. Lozada as he had defended many depositions while working at Liberty Mutual and knew that Mr. Kardell was not doing his job, he failed to make a single objection and often seem completely oblivious to what was happening. Mr. Kardell failed to turn over to Defendants some recordings that Mr. Lozada had made during his employment and as a result, Mr. Lozada was forced to give a <u>second deposition</u> a few weeks later, that time in Austin, for a total of eleven hours of cross examination with Mr. Kardell's consent and without asserting any objections during the cross examination (except for one brief exchange on pp. 246—48 Vol. 1, on attached transcript, Exh. 10). Not only did Mr. Kardell fail to assert a single objection in eleven hours of cross examination, he instructed Mr. Lozada on the record that he should make his own objections to the questions. (p. 41 from Vol. 2, Exhibit 11).

The timeline submitted by Defendants in the administrative proceeding documenting Mr. Kardell's erratic behavior and the fact that he missed three separate administrative deadlines to serve written discovery or provide necessary pre-trial materials is summarized in Ex. 8 (MGI's Motion for Clarification in administrative proceeding). In February 2018, the discovery deadline

was set for July 23, 2018. On June 22, 2018, Mr. Kardell made his first request for a deposition, and it was for Juan Manuel Gonzales (Mr. Lozada's supervisor), which was set for July 12th. On June 29th, Mr. Kardell canceled the July 12th deposition and asked for dates for depositions of nine MGI employees. On July 2d, Mr. Kardell reversed direction and proposed instead to send written questionnaires to "five or six" of the employees, followed by a short telephone deposition, if necessary. On July 6th, Mr. Kardell reversed direction again and proposed no questionnaires and asked for a discovery extension and *for Mr. Lozada to be able to take the depositions.* At that time, Mr. Kardell represented to Mr. Lozada that he had health issues that prevented him from taking the depositions. Mr. Kardell apparently had knee surgery at some point that summer. MGI then filed all of its pre-trial materials. Mr. Kardell filed no pre-trial materials, missing the deadline entirely. Mr. Kardell filed a motion to extend all of the deadlines and the final hearing date, which was granted with a new discovery deadline of November 11, 2018. On September 21, 2018, Mr. Kardell asked for deposition dates for three employees and asks again if Mr. Lozada can conduct the depositions himself. On October 3, 2018, Mr. Kardell asked again if Mr. Lozada could conduct the depositions and filed a "Motion to Substitute Complainant as Counsel." While Mr. Lozada was a licensed attorney, he has never practiced employment or whistleblower law and did not feel qualified to take any of the depositions. He was not really being informed of what was going on or what depositions Mr. Kardell wanted him to take. On October 10, 2018, Mr. Kardell finally conducted the deposition of John Tyson. At the conclusion of the deposition, Mr. Kardell announced to defense counsel that he was withdrawing from the case. On October 17, 2018, the "Motion to Substitute for Purposes of Deposition" was denied. Mr. Kardell then attempted to get Defendants to agree to "designate" Mr. Lozada as "pro se." Mr. Lozada was *unaware* of these efforts on the part of Mr. Kardell.

Upon request, the discovery deadline was again extended to December 14, 2018. Mr. Kardell added a number of witnesses that were intended to be deposed, including Dana Johnson and Derya White, neither of whom he deposed.

On October 17, 2018, Mr. Kardell told opposing counsel, Mr. Barcus, that he was withdrawing from the case, which Mr. Kardell did NOT tell Mr. Lozada about. Mr. Lozada only learned about it through Mr. Kardell's email exchange with defense counsel:

On Oct 17, 2018, at 1:35 PM, Steve Kardell wrote:

"I will note you as opposed. I can't confirm that it would be a permanent withdrawal. I'm assuming for me to come back into the case, the judge would have to approve it."

Juan Manuel Gonzalez and Domh Leandro were finally presented for deposition in December 2018, in Miami. Mr. Kardell then told Mr. Lozada that he could not make it to the depositions, so Mr. Lozada was forced to ask his associate, Davut Atik, to take both depositions. They spent many, many hours getting Mr. Atik ready to take the two depositions and flew to Miami to attend JMGs and appear telephonically for Leandro's. Even though Mr. Lozada had given Mr. Kardell $7,500 to cover expenses, Mr. Lozada was forced to pay for the travel and the costs of the depositions themselves—including court reporter fees. Additionally, in November 2018 as Lozada and Atik were trying to prepare for the depositions, Mr. Kardell initially refused to grant access to Mr. Lozada's personal client folder to Lozada's associate, Atik. Mr. Kardell stated that he needed to purge the file because he had a significant number of documents in the file that made "derogatory" comments about Mr. Lozada.

C. This Lawsuit

Suit was subsequently filed in this Court. Despite his representation to defense counsel that he was withdrawing and his repeated efforts to have Mr. Lozada take the depositions, Mr.

Kardell remained in the case.  Mr. Kardell subsequently missed two additional deadlines in this Court to serve written discovery—and in fact none was ever served.   In the exactly three years that Mr. Kardell represented Mr. Lozada, Defendants were never required to provide a single document or tangible piece of evidence and there were never subpoenas served on the DOJ or the FTC to obtain any documentation related to the Injunction or Deferred Prosecution Agreement. In three years, Mr. Kardell failed to serve a single Request for Production, a single Interrogatory, a single Request for Admissions or a single subpoena.  Mr. Kardell missed every single deadline to designate experts, including after representing to the Court in January 2019 [ECF 49] that he only needed another ten days to do so.  Despite the Court granting the requested extension [ECF 50], Mr. Kardell failed to designate experts, including an economist to prove up Mr. Lozada's economic damages.

In February 2020, Mr. Lozada sent Mr. Kardell an email stating that Mr. Kardell had missed the expert designation deadline, had done a terrible job in a key deposition and did not seem to know what he was doing (it should be noted that Mr. Kardell missed five separate deadlines to send written discovery to Defendants and none was EVER sent).  Mr. Lozada attempted to terminate the attorney-client relationship at that time.   [Ex. 2].   However, Mr. Kardell refused to withdraw and the relationship between Mr. Lozada and Mr. Kardell continued to decline.

On April 4, 2020, at 1:19 a.m., Mr. Kardell sent an email to Mr. Lozada stating "I suggest you save your energies that currently seem to be focused on blaming me for your problems in this case and let's discuss how to address this red herring discovery objection that Barcus has filed."  [Ex. 3].  At 4:04 p.m. that same day, Mr. Kardell sent another email saying "the more I think about this situation, and you having overplayed your hand here (by attacking me) I've

9

decided not to voluntarily withdraw at this point and retain my position as lead counsel in this case and will not withdraw unless ordered by the court." He went on to instruct that anything filed in the case still needed to be approved by him. He stated "if you instruct [attorney Ted Garber] to file something without giving me the opportunity to look at it first, then **I will immediately file a motion to strike that** pleading and explain some of your unethical practices in this case to the court (which are numerous)." [Ex. 3, emphasis in original]. Mr. Kardell went on to allege that Mr. Lozada had ceased to have actual damages and was trying to take depositions to "bully, harass and intimidate witnesses." [*Id*.]. He closed that email thread again with a veiled threat to provide some unidentified information to the Court: "Most federal judges often see this problem, i.e., former-employee/litigants that can't seem to separate legitimate issues in disputes from their own emotions, and they usually aren't reluctant to order sanctions in these situations, sometimes dispositive sanctions." [*Id*.]. A short time later, Mr. Lozada responded to Mr. Kardell that Mr. Kardell was misrepresenting the truth and did not have an understanding of the facts of the case. [*Id*.]. Mr. Lozada indicated he would be filing a bar complaint. [*Id*.]. The next day, April 5th, at 1:05 p.m., Mr. Kardell sent another email stating that Mr. Lozada had engaged in sanctionable conduct by trying to designate himself as an attorney in the case and that, inexplicably, Mr. Lozada [while Mr. Kardell was representing him], had engaged in discovery abuse. [*Id*.]. He ended this email with yet another threat: "I realize that it would likely be improper for me to volunteer this information to both the Court and Barcus, if you file a motion to remove me, the Court could obviously inquire about this conduct on your part, and could possibly even sanction you *sua sponte*." [*Id*.]. Mr. Lozada, extremely upset, wrote Mr. Kardell back at 2:17 pm and stated that he had never misrepresented anything,

that Mr. Kardell's claims were ridiculous and that Kardell was making up allegations because he had been fired.  [*Id*.].

   D. Mr. Kardell's Threats to Reveal Confidential Information

 There are at least three separate times that Mr. Kardell has threatened Mr. Lozada to release confidential information and/or presumably done so as well as threatened to invent attorney client communications and "reveal" them to the Court and opposing counsel:  a) in an odd exchange with Mr. Lozada threatening to reveal attorney client communications to the Court and to opposing counsel that Mr. Kardell invented, as described in section C. above, with the specific email exchanges attached as exhibits; b) in another series of odd exchanges with Mr. Lozada's new counsel regarding Mr. Kardell filing his own response to Defendant MGI's Motion for Summary Judgement despite long having been withdrawn as counsel, as described more fully below with the specific email exchanges attached as exhibits; and c) in another series of exchanges with Mr. Lozada's new counsel, stating that he had spoken to an individual about Mr. Lozada's case long after withdrawing as counsel and without any authority whatsoever (again, with the written communications attached as exhibits).

 Mr. Kardell withdrew from representation in this case by Order of April 15, 2020 [ECF 84].  Subsequently, Defendant MGI filed a Motion for Summary Judgment alleging that the OSHA complaint (drafted and filed by Mr. Kardell) that had been filed was insufficient to support a claim.  In August 2020, Mr. Kardell contacted Mr. Lozada's current counsel, Susan Hutchison.  [Ex. 4].  Ms. Hutchison was working on drafting a Response to the MSJ and Mr. Kardell expressed that he was upset about what he felt was a personal attack on him in the MSJ and wanted to defend his "intent."  Ms. Hutchison, understanding that he felt attacked, stated that he could draft an affidavit addressing the sufficiency of the OSHA complaint and she could use it

11

as an exhibit in the Response. [Ex. 5]. However, Mr. Kardell then sent a "declaration" revealing what Ms. Hutchison perceived to be work product and also subsequently indicated he would be filing his "own" response, to which Ms. Hutchison objected. [Ex. 6]. Mr. Kardell then drafted his own Response, indicating that he was going to be revealing Plaintiff's "strategic goals," "strategies" and "intent" with respect to the OSHA filing and the filing of the Complaint in this case.[1] [Ex. 6]. Ms. Hutchison attempted to communicate with Mr. Kardell that he was not authorized to reveal any such information as it was both irrelevant to the Court's consideration and violated attorney client communications/attorney work product. [Ex. 6]. Mr. Kardell's response was "I disagree." [*Id.*]. Ms. Hutchison refused to attach Mr. Kardell's "declaration," and, fortunately, he did not file his own Response. However, Mr. Kardell's cavalier determination to reveal attorney work product was extremely concerning.

On October 6, 2020, Mr. Kardell indicated that he had a conversation with another individual about Mr. Lozada's case that his current counsel might find "interesting."[2] [Ex. 7]. Ms. Hutchison responded by asking "[c]an you help me understand why you are discussing Mr. Lozada's case with anyone....I truly do not know how to make it any clearer that not only are you not authorized to discuss Mr. Lozada's case, doing so breaches your legal and ethical duties as a former attorney." [Id.]. Again, Mr. Kardell gave no indication that he took the issue seriously.

### III.   Argument

Under Texas law, "whether and how to compensate an attorney when a contingent fee contract is prematurely terminated depends on whether the attorney was discharged, withdrew with the consent of the client, or withdrew voluntarily without consent." *Campbell Harrison &*

---

[1] Plaintiff does not attach Mr. Kardell's specific declaration or response in that Plaintiff contends they reveal privileged work product and Plaintiff does not waive such work product.
[2] Plaintiff redacts the specifics of to whom Mr. Kardell was speaking as a professional courtesy, but if the Court so instructs, will provide such information in an unredacted form. Suffice it to say that such "discussion" was extremely concerning.

*Dagley L.L.P. v. Lisa Blue/Baron & Blue,* 843 F. Supp. 2d 673, 686 (N.D. Tex. 2011); *Augustson v. Linea Aerea Nacional–Chile S.A. (LAN–Chile),* 76 F.3d 658, 662 (5th Cir.1996). An attorney discharged for cause can only recover in quantum meruit. *Id.* Where an attorney, without just cause, abandons his client, he forfeits all right to compensation. *Campbell,* 843 F.Supp. 2d at 686*.* See also*, Whiteside v. Hartung,* 1999 WL 548211, at *6 (Tex.App.-Houston [14th Dist.] July 29, 1999, unpub., pet. denied) (under contingency fee agreement, client has good cause to discharge attorney where attorney breaches his fiduciary duty to client); *Rocha v. Ahmad,* 676 S.W.2d 149, 153 (Tex.App.-San Antonio 1984, writ dism'd) (under contingency fee agreement, client has good cause to discharge attorney where "attorney fails to perform his duties in the manner that an attorney of ordinary skill and ability would have performed his duties"); *Sanes v. Clark,* 25 S.W.3d 800, 805 (Tex.App.-Waco 2000, pet. denied) (holding that contingency fee contracts are voidable where attorneys fail to comply with Disciplinary Rules).

"Client-lawyer fee contracts entered into after the matter in question is under way are subject to special scrutiny." *Campbell,* 843 F. Supp. 2d at 683. In the case *sub judice*, the fee contract was signed approximately five months after representation began. (Exh. 9 and 12)

Where an attorney commits a "clear and serious violation" of his fiduciary duties to a client, a court can reduce or eliminate the attorney's fee. *Campbell Harrison & Dagley L.L.P. v. Lisa Blue/Baron & Blue*, 843 F. Supp. 2d 673, 685 (N.D. Tex. 2011); *Burrow v. Arce,* 997 S.W.2d 229, 240–41 (Tex.1999). A violation is clear if a reasonable lawyer would have known the conduct was wrongful. *Id.* at 241. In the case *sub judice,* Mr. Kardell committed multiple breaches of his fiduciary duties. He made misrepresentations, including that he would file a *Sabine Pilot* lawsuit, that he would conduct appropriate discovery, and that he would meet necessary deadlines. Mr. Kardell continually tried to force Mr. Lozada to do Mr. Kardell's work,

including making Mr. Lozada take depositions without Mr. Kardell present.  He made derogatory statements about Mr. Lozada, bizarrely accused Mr. Lozada of "abusing discovery" even though Mr. Kardell was the attorney of record, and then threatened repeatedly to report some kind of misconduct (invented by Mr. Kardell) to the Court for which Mr. Lozada would be sanctioned. Mr. Kardell refused to withdraw when clearly terminated by Mr. Lozada and again threatened Mr. Lozada to intervene if anything was filed without Mr. Kardell's consent.  Under these circumstances, Mr. Kardell should receive no fee.  See also *City of Alexandria v. Brown*, 740 F.3d 339, 344 (5th Cir. 2014)(finding that the attorney's work performed had "no value" even though the attorney claimed 1,650 hours of time in case).

FOR THE REASONS STATED, Plaintiff prays that Intervenor Kardell's request for fees be denied in all things and for such further relief as justice may require.

Respectfully submitted,

/s/Susan E. Hutchison
Texas Bar No. 10354100
sehservice@hsjustice.com

Hutchison & Stoy, PLLC
505 Pecan St., Ste. 101
Fort Worth, Texas 76102
Phone:  817-820-0100
Fax:   817-820-0111

S. Rafe Foreman
Texas Bar No. 10354100
srfservice@hsjustice.com

Hutchison & Stoy, PLLC
1312 Texas Ave., #101
Lubbock, TX  79401
(806) 491-4911

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

      This is to certify that on December 18, 2020, a true and correct copy of the above and foregoing document was served on the following attorneys of record by delivery to each of them via facsimile transmission:

Steve Kardell
skardell@kardelllawgroup.com
Kardell Law Group

John M. Barcus, Gary D. Eisenstat
Ogletree, Deakins
john.barcus@ogletree.com
rroeser@haltomdoan.com

J. Randall Roeser, Darby V. Doan
Haltom & Doan
rroeser@haltomdoan.com
ddoan@haltomdoan.com

                                  s/Susan E. Hutchison
                                  Susan E. Hutchison